TOWN OF GENEVA, Plaintiff-Respondent,

v.

William A. TILLS, Jr., Defendant-Appellant.

Supreme Court

*No. 84–1969. Argued November 25, 1985.—Decided April 16, 1986.*

(Also reported in 384 N.W.2d 701.)

For the defendant-appellant there were briefs by *Patrick J. Hudec* and *Greenwald, Maier & Hudec, P.C.,* East Troy, and oral argument by *Patrick J. Hudec.*

For plaintiff-respondent there was a brief by *Paul E. Kremer* and *Seymour, Kremer, Nommensen & Morrissy,* Elkhorn, and oral argument by *Paul E. Kremer.*

HEFFERNAN, CHIEF JUSTICE. This is an appeal from a judgment of the circuit court for Walworth county which we accepted on certification of the court of appeals. We accepted certification of the question, "whether circuit courts may permit trial testimony by telephone during civil jury cases even though an objection has been raised." We reverse the judgment of the circuit court, which found William A. Tills guilty of violating a traffic ordinance of the Town of Geneva, which conformed to sec. 346.63(1)(a), Stats., operating a motor vehicle while under the influence of an intoxicant (OMVI), and sec. 346.63(1)(b), illegal blood alcohol concentration (IBAC). Because we conclude that, under

the facts and circumstances of this case, the trial judge's last minute determination to permit the village's scientific witness, a State Laboratory of Hygiene chemist, to testify by telephone was an abuse of discretion, which deprived the defendant of the opportunity to have a meaningful cross-examination of the witness, we reverse and remand for a new trial.

The defendant pleaded not guilty to this first OMVI offense. He was tried before a jury, which found him guilty on a 5–1 vote.

At the start of the trial, the village's attorney announced that he was having some difficulty in securing the appearance of the State Laboratory of Hygiene chemist, Thomas Neuser, because he was appearing at a homicide trial in Waukesha. Village Attorney Paul Kremer, however, stated that he expected Neuser during the afternoon. Counsel for the defendant and the court acquiesced in accommodating the village even if it meant altering the order of proof.

As the trial developed, there was proof that the defendant was in a roll-over accident in his jeep and that at the time the roll-over accident was discovered Tills was hanging head down in the wreckage. There was evidence that he was bleeding from a compound fracture in one arm and a four-inch gash on his forehead. He stated that he blacked out and, at other times, was confused and in shock. He testified that a stability problem with the jeep had caused him to lose control. One of the state's witnesses, a police officer, on cross-examination, testified to the propensity of this model jeep to lose stability and roll over. Tills admitted he had been drinking earlier in the day, but denied that he was under the influence. Three of the state's witnesses, however, testified that, because of the smell of intoxicants and

the defendant's slurred speech and conduct, they believed Tills was intoxicated.

Late in the morning after completion of the rest of his case, counsel for the village announced that he did not yet have his next witness, Chemist Neuser, available for examination.

Apparently—the record is not clear—it was during the noon break that Judge Carlson *sua sponte* decided that he would call Chemist Neuser by telephone and permit him to be sworn and then examined and cross-examined in the hearing of the jury. That this procedure originated with the judge is indicated by the village attorney's initial reaction, to object to the telephone testimony and to request an adjournment until Chemist Neuser could appear in person. Counsel for Tills repeatedly objected to the judge's proposal. Only after Judge Carlson concluded that there was no time in the immediate future when the trial could be rescheduled, and when he stated he was unwilling to adjourn the ongoing proceeding, did the village attorney ask that the testimony of Chemist Neuser be taken telephonically. That motion was granted over defense objections.

Objection was made for the reason that there was no statutory authority for the use of telephonic testimony at trial. Defense counsel also asserted that he would be unable "to confront the witness personally," that he would be unable to effectively cross-examine, and that the jury could not see the reaction and facial expressions of the witness and would therefore have a problem trying to determine credibility. More specifically, counsel objected because he had intended to cross-examine Neuser by use of a chalk board to explain the blood alcohol test techniques to the jury.

The trial judge disposed of the objections by stating:

> "I'm not going to waste anymore time on this. As far as I'm concerned, I have looked it up, and that is the law, so I'm going to allow his testimony by telephone and we'll bring the jury in."

Defense counsel also asserted that the record was devoid of proof that Neuser had been properly served with a subpoena to testify. The trial judge disposed of this matter, pointing out that Neuser had stated he had received a subpoena and would have responded to it had not the judge of the Waukesha trial refused to release him.[1]

The procedure employed by Judge Carlson in telephonically using Neuse's testimony was as follows. During the noon hour in the presence of counsel, but out of the presence of the jury, the judge called Neuser at Waukesha. Neuser acknowledged his identity.[2]

---

[1] We think this an insubstantial objection in this case. Whether or not Neuser was subpoenaed to appear at the Tills trial is irrelevant in respect to whether his testimony is otherwise admissible. Admissibility of testimony is not dependent upon whether or not a witness is subpoenaed. Rather, it is dependent upon the competency of the witness and the relevance of the testimony. While a non-subpoenaed volunteer witness may be more susceptible to impeachment on the ground of prejudice than one who, because of a subpoena, had no option but to testify, objection based on that rationale was not made, nor was there any attempt to impeach Neuser's credibility on that basis.

[2] While defense counsel argues on appeal that there was no way to be sure of the identity of the person whose voice was heard on the telephone, that argument was not posed at trial. We deem that objection waived. Moreover, the rules of evidence, Rule 909.015 (6), Stats., specifically recognize that where a call is placed

Chemist Neuser was questioned by Judge Carlson on his understanding of responsibilities in taking an oath or affirming that his testimony would be the truth. Judge Carlson then, in the preliminary proceeding, administered the affirmation in statutory language (Rule 906.03, Stats.) to Neuser over the telephone. He asked Neuser to raise his right hand during the course of the affirmation, and Neuser stated that he had done so. The court's questions, none of which were objected to at the preliminary stage by either counsel, were to determine the reason for Neuser's nonattendance in the proceedings in the Walworth county circuit court. Neuser stated he was in Waukesha pursuant to a subpoena, that the judge there refused to release him, and that his absence from the trial in Walworth county was for no other reason.

It was after this preliminary telephonic questioning of Neuser that counsel were allowed to make the objections referred to above.

After disposing of those objections, Judge Carlson called the jury into his chambers, where they were able to hear the responses of witness Neuser by means of a speaker phone.[3] Judge Carlson then explained to the

---

for a particular person and the answering person acknowledges that such is his or her identity, identity is presumptively established. *See,* also, *Campbell v. Wilson,* 18 Wis. 2d 22, 30 n. 1, 117 N.W. 2d 620 (1962). We conclude the objection, even if timely posed, is meritless.

[3] No objection was made to the fact that the telephonic testimony was taken in chambers and not in the courtroom. Thus, a question could be raised in respect to whether the trial was open to the public. In the event telephonic testimony is otherwise permissible at trial, it would appear that the testimony should be received in the courtroom.

jury why Neuser was not at the Walworth county trial even though he had been subpoenaed. He again telephonically administered the affirmation to Neuser, this time in the presence of the jury.

Direct examination of Chemist Neuser revealed that Neuser was a certified public health chemist. Then, pursuant to questions by the counsel for the village, he testified as to the contents of a Blood and Urine Analysis form of the State of Wisconsin. The village counsel asked, "And in Block A how does that read?" To this question, defense counsel objected, saying, "I would object. I have no ability to review that document. I don't know what he's testifying to." The objection was overruled.

By referring to the approximate position in which questions appeared in the standard form, prosecution counsel elicited Neuser's response in respect to each entry Neuser had made in the form following the examination of Tills' blood sample. The information thus elicited revealed the subject's name, William A. Tills, Jr., the date, the purpose of analysis (alcohol), the type specimen (blood), at whose request and by whom the specimen was collected, the acknowledgment of the specimen receipt by the laboratory, and the date and results of the analysis—in this case, "the blood ethanol level was 0.209 per cent by weight."

After satisfying the judge, over defense objections, that a proper foundation for the test results had been laid, Neuser was permitted to testify as to the blood alcohol content (BAC) of Tills' blood—0.209 percent.

In a proper case, where a judge in the exercise of discretion has the authority to receive trial testimony in a courtroom not open to the public, the same discretion may be applied to telephonic testimony at trial.

Eventually, all the pertinent information set forth in the form was allowed in evidence, and Neuser testified telephonically that he had "cause[d] all this information to be incorporated in the report."

Defense counsel then proceeded to attempt cross-examination. Without any difficulty he probed the academic and experience background of the witness.

However, in response to defense counsel's question relating to the level of acetone in Tills' blood, Neuser acknowledged that such information—information relevant to the general BAC revealed on the "Blood/Urine Analysis" form—was recorded on a "strip chart recorder" that was in the possession of the witness, but was not then available for examination by the defense counsel or by the court and jury. Defense counsel objected:

> "Then I would object to any—I would object to continuing on this basis. I can't cross-examine the witness properly. The witness—he's testifying to matters which I do not have before me and I'm incapable of proceeding in this fashion."

The objection was not sustained and questioning proceeded. Despite the lack of the strip record on which the objection was based, defense counsel cross-examined the chemist on the theory and general operation of the blood-testing device.

After the termination of the telephonic testimony, counsel again met with the judge. Judge Carlson pointed out that the record revealed that at no time did defense counsel make a pretrial demand for "discovery of the tests of the blood results from the chemist." Judge Carlson went on to say:

174

> "I don't feel that on that ground he would have any expectations at all that that chemist would have any records with him when he came whatsoever. He didn't subpoena the chemist himself or did he demand that those items [gas chromatograph strip recordings] be produced before this time."

To this statement, defense counsel responded that Neuser voluntarily testified from documents in his possession which defense counsel could have inspected had Neuser been present in person. Counsel again renewed his objection that he was denied the option of inspecting those documents before he proceeded with his cross-examination.

Judge Carlson reiterated his feeling that defense counsel could have better protected himself by discovery and demanding the production of the documents prior to trial. Although recognizing in most cases the importance of a face-to-face examination before a jury as a gauge of a witness' credibility, in the instant case Judge Carlson asserted credibility was a minor aspect of the truth-seeking process and what was important was amply assured—the opportunity to probe the accuracy of the machine and the accuracy of the test methods and materials.

Objection was repeated in respect to all the telephonic testimony, and defense counsel pointed out he had only "a very brief amount of time between which we were guaranteed the physical unavailability of Mr. Neuser [and the commencement of Neuser's telephonic testimony]." Defense counsel pointed out that he was taken by surprise by the sudden and unexpected absence of the witness and the determination by the judge that, despite Neuser's physical absence, his oral testimony would be permitted by telephone. He said he

had no opportunity to research or review any objections or challenges to the telephonic testimony.

Defense motion for a directed verdict was denied. Tills then testified as the only defense witness. The jury returned a verdict of guilty, and Tills was assessed a forfeiture of $437.50 and costs, together with a suspension of driving privileges for ninety days. This appeal ensued and, on the certification, this court accepted the appeal on the single question posed: "Whether circuit courts may permit trial testimony by telephone during civil jury cases even though an objection has been raised."

■ We address this question only. Although we reverse because we conclude that the trial court abused its discretion by allowing the telephonic testimony in the circumstances of this case, we conclude that a court may permit trial testimony by telephone in civil jury cases if in the circumstances, in the exercise of sound discretion, the right to a fair trial is preserved.

■ In objecting to the telephonic testimony, defendant pins his argument to a substantial degree upon the confrontation clauses of the United States Constitution (sixth amendment) and the Wisconsin Constitution (art. I, sec. 7). Such right, however, does not arise in a civil suit. *See, Village of Bayside v. Bruner,* 33 Wis. 2d 533, 148 N.W. 2d 5 (1967); *In the Matter of W.J.C.,* 124 Wis. 2d 238, 369 N.W. 2d 162 (Ct. App. 1985). The instant matter is a civil forfeiture action authorized by secs. 345.20(2) and 349.06(1), Stats.[4]

---

[4] "**345.20 General provisions in traffic forfeiture actions.**

." (2)    PROCEDURE. (a) Except as provided in par. (b), the apprehension of alleged violators of traffic regulations and the trial

Because these civil proceedings are similar in some respects to criminal cases, *e.g.,* guilty or not guilty verdicts, defendant would have us apply the constitutional rules of confrontation with the strictures that are applicable in criminal prosecutions. Essentially the same argument was asserted in *Village of Bayside,*

---

of forfeiture actions for the violation of traffic regulations shall be governed by ss. 345.21 to 345.53. Where no specific procedure is provided in ss. 345.21 to 345.53, ch. 799 shall apply to such actions in circuit court.

" (b)    The trial of forfeiture actions in municipal court for the violation of traffic regulations shall be governed by ch. 800. Provisions relating to the uniform traffic citation and complaint in s. 345.11, to arrests in ss. 345.21 to 345.24, to deposits and stipulations of no contest under ss. 345.255 to 345.27, to the authority of the court under ss. 345.47, 345.48 and 345.50 and to guaranteed arrest bonds under s. 345.61 apply to violations of ordinances to be tried in municipal court.

" (c)    Section 967.055 applies to traffic forfeiture actions for violations of s. 346.63 (1) or a local ordinance in conformity therewith.

" (d)    A nonmoving traffic violation is governed by s. 345.28. The trial of forfeiture actions for nonmoving traffic violations is governed by ss. 345.28 and 345.34 to 345.47. Where no specific procedure is provided in ss. 345.28 or 345.34 to 345.47, ch. 799 applies to actions in circuit court and ch. 800 applies to actions in municipal court."

**"349.06 Authority to adopt traffic regulations in strict conformity with state law.**

" (1)    Except for the suspension or revocation of motor vehicle operator's licenses, any local authority may enact and enforce any traffic regulation which is in strict conformity with one or more provisions of chs. 341 to 348 and 350 for which the penalty for violation thereof is a forfeiture. A municipal court may revoke or suspend a license for a violation of a local ordinance in conformity with s. 346.63 (1)."

177

*supra,* and determined adversely to the contention that a municipal forfeiture was in constitutional terms to be equated with a criminal proceeding.

Essentially, the equivalent protection afforded in civil cases is the rule against hearsay, except for recognized exceptions or in circumstances where unusual indicia of trustworthiness are recognized and where there is the opportunity for meaningful cross-examination. In the instant case, it is the right of cross-examination—a right conferred by the common law, not the constitution, that is implicated.[5]

We conclude that the defendant was denied that common law right to have a meaningful cross-examination. That denial requires that there be a re-

---

[5] The hearsay rule comes into play when there is an effort to admit the statement of an out-of-court declarant. Rule 908.01 (3), Stats., defines hearsay:

"(3) HEARSAY. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Thus, in the instant case, we conclude that hearsay is not implicated, for the witness is deemed to be "in court." Yet, the right to cross-examine, the usual problem with hearsay testimony, is implicated, but no more and no less than if the witness were physically in court and barriers were posed to meaningful cross-examination. Here, the barrier posed is the fact that being "out of the presence" documents used by the witness and not available for cross-examination cannot be used to adversely examine the witness.

Yet it should be noted that the hearsay rule and the right to cross-examine are interwoven. Wigmore has defined hearsay as:

"[A] rule that no assertion [can be] offered as testimony . . . unless it is or has been open to [the] test by cross-examination or an opportunity therefor." *Wigmore on Evidence* (Students' Textbook), sec. 242, p. 238.

versal. This right, the right to cross-examination, is an attribute of the common law and not one solely mandated by the constitution in criminal cases.

5 *Wigmore On Evidence,* sec. 1367, p. 32 (Chadbourn rev. 1974), states:

> "For two centuries past, the policy of the Anglo-American system of evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. . . .
>
> "[I]t is beyond any doubt the greatest legal engine ever invented for the discovery of truth. . . . If we omit political considerations of broader range, then cross-examination, not trial by jury, is the great and permanent contribution of the Anglo-American system of law to improved methods of trial procedure."

In Wisconsin, the right of cross-examination at common law is codified in the Rules of Evidence. Rule 906.11(2), Stats., provides:

> "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. In the interests of justice, the judge may limit cross-examination with respect to matters *not testified to on direct* examination." (Emphasis supplied.)

Thus, although the judge has a relatively broad discretion as to directing the mode of examining and cross-examining witnesses, the judge's absolute right to exclude cross-examining questions is sharply limited by the last sentence of sub. (2) of the rule. A judge does not have the discretion to allow the admission of testimony when the right of cross-examination is limited by the circumstances.

As McCormick *Evidence* (Hornbook Series), sec. 19, pp. 42–43 (1954), has stated:

> "The infringement of the right of cross-examination, however, may come, not from the refusal or inability of the witness, but from the action of the judge. The judge . . . has wide discretionary control over the *extent* of cross-examination upon particular topics, but the denial of cross-examinations altogether, or its arbitrary curtailment, upon a proper subject of cross-examination will be ground for reversal if the ruling appears to have been substantially harmful."

While, in the instant case, the judge did not deny the right of cross-examination by limiting the defense counsel's right to ask questions, he did, by permitting telephonic testimony, allow Chemist Neuser to use documents which were not, and had not been, made available for defense counsel's inspection. Thus, as defense counsel stated at trial when Neuser referred to documents or materials generated by the tests, *e.g.,* the strip recording of the gas chromatograph tests:

> "I would object to continuing on this basis. I can't cross examine the witness properly. The witness—he's testifying to matters which I do not have before me and I'm incapable of proceeding in this fashion."

And in respect to the Blood/Urine Analysis form, defense counsel stated, "I would object. I have no ability to review that document. I don't know what he's testifying to."

Judge Carlson asserted that all of these documents could have been before the defense counsel had there been a timely demand for them. Thus, the judge con-

cluded, the inability to cross-examine was the fault of the defense counsel. This court has pointed out that the wide-open right to cross-examine, combined with the abolition of the requirement to use the hypothetical question, places a substantial onus on cross-examining counsel. As we said in *Rabata v. Dohner*, 45 Wis.2d 111, 134 n. 1, 172 N.W. 2d 409 (1969):

> "The trial lawyer's ability to prepare to cross-examine his adversary's expert witness is, of course, dependent to a large degree upon his diligence in pursuing the pretrial discovery procedures that are available in Wisconsin."

Judge Carlson concluded that defense counsel had not properly prepared or he would have been ready to cross-examine on the basis of the documents used by Neuser, to which he could have had access prior to trial. We did not, however, accept this appeal on certification to determine whether or not the trial court was correct in that assertion. In any event, whether or not defense counsel by diligent use of discovery procedures could have obtained the documents is irrelevant in the context of the record of this case.

The record shows that, on at least one prior occasion, the village had asked for and obtained a continuance because it was unable to produce Chemist Neuser in person. At the outset of this very trial, the village attorney announced that he would produce Neuser in court but asked for the indulgence of the court and defense counsel to produce him out of order if that became necessary. Even after the court decided to obtain the testimony of Neuser telephonically, the village attorney objected and asked for another continuance because he wished to produce Neuser in person. Thus, it is obvious from the record that the subpoenaed witness

was expected by the village to appear in person, and it was to be expected, in conformance with the rules of evidence, that writings on which he would rely in the course of testimony would be available for inspection. The express assertion of the village counsel was that Neuser would be produced in person. If Neuser had been produced as expected, the documents referred to by him would have been in court.

Thus, the infirmity of this proceeding lies not in anything intrinsically wrong in respect to the use of telephonic testimony in a civil case, but rather in that the judge exercised his discretion in such a manner as to surprise defense counsel with a witness who could not be properly cross-examined because he testified from documents which were not produced in court, and from documents that defense counsel did not know he would need to cope with Neuser's testimony until just minutes before the telephonic testimony was heard by the jury. It is probable that Judge Carlson did not realize the particular handicap under which defense counsel would labor until reliance was placed by the witness on documents not before the court and not available for contemporaneous access by defense counsel. However, when this fact became apparent and defense counsel made objection that he could not cross-examine, the judge in the exercise of discretion should have at that time considered suspending further examination and should have carefully considered whether defendant was being limited in his right to have a meaningful cross-examination or should have ordered a subsequent in-person examination of Neuser.

Thus, in this civil case, we find no fatal defect in telephonic testimony *per se.* There was no doubt that the person being examined was the proper witness.

Identity was assured by the manner in which Judge Carlson placed his call. We find the administration of the oath appropriate. It was administered in the form required by Rule 906.03, Stats. The judge exercised proper discretion in putting the oath (or affirmation) to the witness in such a manner that the spirit and the letter of Rule 906.03 was observed. We see no error in the fact that the witness was not in the physical presence of the jury, the judge, or the parties, insofar as the administration of the oath is concerned. We also conclude that the judge exercised appropriate discretion when he concluded that, in a routine evidentiary proceeding such as this, credibility as determined by demeanor was a relatively insignificant factor, and that much more important was examination and cross-examination, which explained to the jury the scientific basis for the blood alcohol content.

It is apparent from the testimony that examination and cross-examination was not a problem except for the fact that, because of surprise, defense counsel was unable to cross-examine on the basis of the documents that the witness elected to use and which were, by the nature of the telephonic examination, withheld from counsel.

We conclude, therefore, that it was not erroneous to allow telephonic testimony in this civil jury case, but to allow such testimony as a last-minute determination by the trial judge, when there was no inkling that such a procedure would be used and when it became apparent that counsel was handicapped on cross-examination, constituted an abuse of discretion which merits reversal. The court's abuse of discretion curtailed the defendant's right to have a meaningful cross-examination.

As we indicated in *State v. Disch*, 119 Wis. 2d 461, 351 N.W. 2d 492 (1984), fair play is demanded in civil, as well as criminal, "prosecutions." Here, as matters developed, it was not fair that defense counsel was deprived of the *opportunity* for a fully meaningful cross-examination.

This finding of error does not, however, end our inquiry. The question is whether the error affected a substantial right of the party seeking to reverse.

Rule 805.18, Stats., in respect to civil trials provides:

> "**805.18     Mistakes and omissions; harmless error.** (1) The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.
>
> " (2)     No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of drawing, selection or misdirection of jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial."

We conclude that the error here affected a substantial right—the right to have a meaningful cross-examination. Tills was denied a right which as Wigmore, *supra,* points out may be more significant than the right to trial by jury itself.

We pointed out in *State v. Dyess,* 124 Wis. 2d 525, 547, 370 N.W. 2d 222 (1985), that we accepted Rule

805.18 (2), Stats., from the Wisconsin Code of Civil Procedure as the harmless error rule in criminal cases. Hence, it is apparent the rule of harmless error explicated in *Dyess* is applicable in this civil case.

We point out, however, that the question of whether the error, substantial as it was, actually affected the outcome here is one on which reasonable persons may well differ.

There was admissible evidence that tended to prove that Tills was intoxicated. *State v. Disch,* 119 Wis. 2d 461, 463, 351 N.W. 2d 492 (1984), held that the alcohol test was admissible as a matter of law. Three persons testified that Tills smelled of alcohol and that his conduct, speech, and mannerisms gave them reason to express the opinion that Tills was under the influence. Yet Tills testified, without dispute, that he had been hanging upside down, trapped in the wreckage for perhaps as long as one-half hour. It was undisputed that he was bleeding from a compound facture and from a four-inch cut to the head. He testified that he was in shock and in great pain. He denied drinking at any time near the time of the roll-over. The opinion evidence of those who observed him at the scene could be placed in doubt by the jury's realization of the serious nature of Tills' injuries when the jeep left the road and rolled over. Thus, the crucial evidence was that of Chemist Neuser, who could not be meaningfully cross-examined in respect to documents that were not in defense counsel's possession because of the unexpected *sua sponte* action of the judge. The error resulting affected a substantial right of the defendant—his right to cross-examine. He is entitled to a reversal and a new trial.

We do not conclude that it was *per se* error to telephonically introduce testimony of a witness. To allow such testimony is a matter that lies within the exercise of judicial discretion that makes sure that fair play is accorded the trial participants. Unfortunately, the nature of the documentary evidence upon which the witness chose to rely impaired, as a matter of fact, the defendant's right of cross-examination. In this case, contrary to the expectations of the trial judge, the attempt to utilize telephonic testimony turned out to be unfair. It need not be in all cases.

*By the Court.*—Judgment reversed and cause remanded for a new trial.