COURT OF APPEALS
DECISION
DATED AND FILED

April 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1024**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019CV934

**IN COURT OF APPEALS
DISTRICT IV**

PETITIONER,

    PETITIONER-RESPONDENT,

  V.

MICHAEL J. THUNDER,

    RESPONDENT-APPELLANT.

        APPEAL from an order of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Affirmed*.

        Before Kloppenburg, Nashold, and Graham, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Michael J. Thunder appeals a Dane County circuit court order granting a petition for a domestic abuse injunction against him.[1] Thunder argues that the evidence before the circuit court was insufficient to support the issuance of the injunction, that the court "denied [Thunder's] right to cross-examine the [P]etitioner" at the injunction hearing, and that the court conducted an impermissible "independent investigation."  For the reasons set forth below, we affirm.

## BACKGROUND

¶2     On April 4, 2019, the Petitioner filed a petition for a temporary restraining order against Thunder and a petition and motion for an injunction hearing alleging Thunder had engaged in domestic abuse.  The Petitioner alleged that she feared Thunder would kill her and her dog, and that over a period of several years Thunder, with whom she had a current or former live-in relationship, engaged in a pattern of verbal and physical abuse towards her.  The Petitioner alleged that, in 2016, Thunder grabbed her arms and pushed her to the ground, and that, in 2018, Thunder shoved her into a closet, causing her head to hit an ironing board.  The Petitioner alleged that, as a result of these and other incidents, she feared Thunder would kill her.

¶3     The circuit court held an injunction hearing on April 17, 2019.  At the injunction hearing, both the Petitioner and Thunder testified.  The Petitioner testified about the alleged incidents forming the basis of petition.  Thunder testified rejecting

---

[1] We do not identify the Petitioner by name in light of the nature of the case, but refer to her as the Petitioner.

the Petitioner's characterization of those incidents, and testified that during those incidents he had acted in self-defense.

¶4    The circuit court found that the Petitioner was more credible than Thunder, and determined that there were reasonable grounds to believe that Thunder engaged in domestic abuse.  On the same day as the hearing, the court issued a domestic abuse injunction against Thunder, prohibiting Thunder from contacting or threatening the Petitioner for four years.  Thunder appeals.

¶5    We reference additional pertinent facts in the discussion below.

## DISCUSSION

¶6    We address each of Thunder's three arguments in turn.

*I. There Was Sufficient Evidence to Support the Issuance of the Injunction.*

¶7    Thunder argues that the evidence was insufficient to support issuance of the injunction, specifically, to support a finding that he "committed intentional acts that caused pain or injury to the [P]etitioner."  We first summarize the standard of review and applicable legal principles; we next summarize additional pertinent background; we then explain why we conclude that the circuit court's findings were not erroneous and sufficiently supported issuance of the injunction; and, finally, we address and reject Thunder's arguments to the contrary.

*A.  Standard of Review and Applicable Legal Principles.*

¶8    The ultimate decision whether to grant a domestic abuse injunction is a matter within the circuit court's discretion, and our review "ultimately is limited to whether that discretion was properly exercised."  ***Welytok v. Ziolkowski***, 2008 WI App 67, ¶23, 312 Wis. 2d 435, 752 N.W.2d 359.  A court's discretionary

determination will be affirmed where it is "demonstrably made and [is] based upon the facts appearing in the record and in reliance on the appropriate and applicable law." *Sunnyside Feed Co. v. City of Portage*, 222 Wis. 2d 461, 468, 588 N.W.2d 278 (Ct. App. 1998). "[B]ecause the exercise of discretion is so essential to the [circuit] court's functioning, we generally look for reasons to sustain discretionary rulings." *Welytok*, 312 Wis. 2d 435, ¶24.

¶9 In order to issue a domestic abuse injunction, the circuit court must find that there are "reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner." WIS. STAT. § 813.12(4)(a)3. (2017-18)[2] "Reasonable grounds" is defined as "more likely than not that a specific event has occurred or will occur." Sec. 813.12(1)(cg). As relevant here, "domestic abuse" is defined as the "[i]ntentional infliction of physical pain" or property damage, or "a threat to engage in" such conduct, by an adult against another adult "with whom the individual has or had a dating relationship." Sec. 813.12(1)(am)1.-6.

¶10 When reviewing the sufficiency of the evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2). A finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence. *Phelps v. Physicians Ins. Co. of Wis., Inc.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615. When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

(1979). If more than one reasonable inference can be drawn from the credible evidence, we must accept the inference drawn by the circuit court. *Id.*

¶11 We independently review whether the factual findings are sufficient to show reasonable grounds for an injunction. *Welytok*, 312 Wis. 2d 435, ¶23.

### B. Additional Pertinent Background

¶12 At the hearing, the Petitioner testified as follows. The Petitioner and Thunder had been in a dating relationship. In 2016, Thunder was arrested for battery and domestic abuse after grabbing the Petitioner's arms, pushing her down, and leaving marks on her wrist and arm; this altercation with Thunder caused her physical pain. In 2018, Thunder grabbed the Petitioner and pushed her down into the closet, and she fell backwards and hit her head. After she got up, Thunder pushed her down again. The altercation caused her physical pain when she hit her head on the ironing board in the closet. The Petitioner testified that "in the month leading up to" the June 2018 incident, Thunder threatened to take her dog "to the pound and have him killed so I couldn't have him."

¶13 At the hearing, Thunder testified as follows. In both the 2016 and 2018 incidents, it was the Petitioner who had been the aggressor. The Petitioner "has a history of saying things and doing things as a means to an end. That's why [previous charges have] been dropped." Thunder denied the Petitioner's allegations, "with the exception of 2016. I did plead guilty to the disorderly conduct because of actions that I took after she left the apartment. I did take some of her belongings and threw them in a pile." Regarding the 2018 incident, the Petitioner came home very angry, threw Thunder's clothes around, and grabbed Thunder from behind by the shoulders; the Petitioner fell only as a result of Thunder pulling away from her. Thunder "didn't touch [her] in any way, shape or form." The Petitioner

grabbed at Thunder, and "every time I let go of her arms, she tried to grab at me again, so I grabbed her arms…. [Y]es, I did … push her." Thunder was charged with disorderly conduct for the 2018 incident, but both charges were dismissed. The dog did not belong to the Petitioner, and Thunder told the Petitioner that "if she wanted me to leave … and she would not let [the dog] remain there that I would have no choice but to take [the dog] to the pound."

¶14 The circuit court found the Petitioner more credible than Thunder, stating that "[the Petitioner's] explanation of what happened is … the more credible here." The court also found "reasonable grounds to believe [Thunder] engaged in, or, based on prior conduct … may engage in domestic abuse of the [P]etitioner as defined under Wisconsin law" and granted a four-year injunction against Thunder.

### C. The Circuit Court's Findings Are Supported by the Evidence and Suffice to Support Issuance of the Injunction.

¶15 The circuit court expressly credited the Petitioner's account of the various incidents—namely, that in 2016 and 2018 Thunder grabbed and pushed her, causing her physical pain, and that he also damaged her belongings and threatened to have her dog killed. A reasonable inference from the Petitioner's testimony regarding these incidents is that Thunder intended to—and did—cause the Petitioner physical pain or injury, and threatened to damage her property. *See* WIS. STAT. § 813.12(1)(am)1.-6. While Thunder relies on his own testimony that he acted in self-defense, the court expressly stated that it found the Petitioner's "explanation of what happened" more credible. Given the Petitioner's testimony regarding these incidents, the court's findings based on that testimony that Thunder had engaged, and might in the future engage, in domestic abuse of the Petitioner suffice to show reasonable grounds for the injunction.

*D.  Thunder's Challenge to the Circuit Court's Credibility Determinations Fails.*

¶16   Thunder argues that the circuit court failed to properly exercise its discretion when it did not "articulate why and how it [] made its credibility determinations," and that it was insufficient for the court "[t]o state that the [P]etitioner was more credible."  Thunder asserts that, because the court did not explain itself, the court necessarily failed to use a "demonstrated rational process."

¶17   Thunder provides no legal authority supporting his argument that the circuit court was required to provide an "explanation" of its credibility determinations.  Accordingly, we need not consider his argument further.  *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments." (citations omitted)).

¶18   Moreover, "[i]t is well settled that the weight of the testimony and the credibility of the witnesses are matters peculiarly within the province of the [circuit] court acting as the trier of fact.  The reason for such deference is the superior opportunity of the [circuit] court to observe the demeanor of witnesses and to gauge the persuasiveness of their testimony." *Kleinstick v. Daleiden*, 71 Wis. 2d 432, 442, 238 N.W.2d 714 (1976). *See also Plesko v. Figgie Int'l*, 190 Wis. 2d 764, 775, 528 N.W.2d 446 (Ct. App. 1994) (When the court acts as the finder of fact, "it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to their testimony.").  This court will not overturn credibility determinations on appeal unless the testimony upon which they are based is inherently or patently incredible. *Global Steel Prods. Corp. v. Ecklund Carriers, Inc.*, 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269.  Here, the circuit court had the opportunity to observe

the demeanor of Thunder and the Petitioner and to assess the persuasiveness of their testimony, and Thunder fails to show that any part of the Petitioner's testimony was inherently or patently incredible. Rather, he argues that his testimony was more credible than the Petitioner's. Under the well-established standard of review set forth above, that argument fails.[3]

## II. The Circuit Court Did Not Deny Thunder's Right to Cross-examine the Petitioner.

¶19    Thunder argues that he was denied his "common law and statutory right to … confront the witnesses against" him when the circuit court "did not permit" Thunder to cross-examine the Petitioner at the injunction hearing. We first summarize the applicable legal principles, next review pertinent portions of the hearing, and then explain why Thunder's argument fails.

### A. Pertinent Legal Principles.

¶20    Because this case is civil in nature, the parties have no constitutional right to cross-examine witnesses. *Town of Geneva v. Tills*, 129 Wis. 2d 167, 176, 384 N.W.2d 701 (1986). Rather, the right to cross-examine witnesses in civil actions arises from the common law. *Id.* at 177. The right is also codified in the Wisconsin statutes, specifically in WIS. STAT. § 906.11(2), which provides, "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. In the interests of justice, the judge may limit cross-examination with respect to matters not testified to on direct examination."

---

[3] Thunder also argues that the circuit court made "unreasonable inferences" in purportedly relying on his having pleaded guilty in 2016 to a disorderly conduct charge in a case involving the parties and on the court's review of the complaint in that case. We address this challenge in the third section below. As explained in this section, the court's reliance on the Petitioner's testimony, which it credited, sufficed to support the court's finding that Thunder had committed domestic abuse against the Petitioner and provided reasonable grounds for issuance of the injunction.

"[A]lthough the judge has a relatively broad discretion as to directing the mode of examining and cross-examining witnesses, the judge's absolute right to exclude cross-examining questions is sharply limited by the last sentence of [§ 906.11(2)]." *Town of Geneva*, 129 Wis. 2d at 179. "[T]he denial of cross-examinations altogether, or its arbitrary curtailment, upon a proper subject of cross-examination will be ground for reversal if the ruling appears to have been substantially harmful." *Id.* at 180 (internal quotations and quoted source omitted).

## B. Additional Pertinent Background.

¶21 The injunction hearing proceeded in pertinent part as follows. First, the circuit court questioned the Petitioner, who appeared in person represented by counsel. The court then explained that it would "turn to Mr. Thunder for just a moment, and then if there's something you see in your notes, counsel, you want to follow up with, I'll allow that."

¶22 Thunder, appearing pro se, testified in pertinent part as detailed above. After Thunder testified regarding the 2016 incident, the circuit court said to Thunder, "All right. Anything else you'd like to say, sir?" In response, Thunder began to testify regarding an incident in which the Petitioner "literally ripped the shirt off my back." The court stopped Thunder and explained that because it was the Petitioner's request for an injunction, that incident was not relevant to the current proceedings. The court again asked Thunder whether he had anything else to say. Thunder then provided additional testimony about his knowledge of, and relationship with, the Petitioner.

¶23 The circuit court then addressed the Petitioner's attorney: "Counsel, did you want to ask any follow-up questions [of the Petitioner], or not?" The Petitioner's attorney then proceeded to examine the Petitioner.

¶24    After the circuit court ruled that it would issue the injunction, Thunder asked, "[a]m I able to say anything on my behalf real quick?" The court replied, "No. Well, I'll let you ask a question in a second." After addressing administrative matters related to the issuance of the injunction, the court asked Thunder, "Now, did you have a question?" Thunder proceeded to ask why the court was able to consider the 2016 incident, given that the incident had occurred several years in the past. The court explained that the age of an allegation is only one factor it considers, and that there was also a 2018 incident it considered. Thunder replied, "Right. And all charges were dismissed." The court replied "Right. But this is a civil case, not a criminal case [and] the DA's Office often has many reasons … for dismissing a case."

### C. The Circuit Court Did Not Deny Thunder His Right to Cross-examine the Petitioner.

¶25    Thunder argues that it "is clear from the record" that the circuit court "did not permit Thunder to cross[-]examine the [P]etitioner." However, in support of this argument, Thunder does not cite to any specific portion of the injunction hearing transcript. In addition, we cannot find such an instance on our own review of the record. The above review of the hearing demonstrates that, despite appearing pro se, Thunder was actively engaged at the hearing and not shy about asking the court questions, and that the court accommodated Thunder and his questions. The record reveals no instance in which Thunder asked the court whether Thunder could ask the Petitioner any questions, and, thus, no instance in which the court denied a request by Thunder to ask the Petitioner questions. Because Thunder's argument that the court "did not permit Thunder to cross[-] examine the [Petitioner]" has no

support in the record, his argument necessarily fails.[4] Thunder appears to argue that the circuit court, nevertheless, had a duty to affirmatively invite Thunder to cross-examine the Petitioner. However, Thunder does not provide supporting legal authority for this proposition, and, therefore, we do not consider it further. *See Industrial Risk Insurers*, 318 Wis. 2d 148, ¶25.

### III. The Circuit Court's "Independent Investigation," If Error, Was Harmless.

¶26 Thunder argues that the circuit court impermissibly engaged in an "independent investigation" of facts when it reviewed the complaint in Thunder's 2016 disorderly conduct case. We first summarize the standard of review, next summarize additional pertinent background, and then explain why we conclude that, assuming without deciding that the court conducted an impermissible independent investigation, any such error was harmless.

### A. Standard of Review.

¶27 The test for harmless error is whether the result would have been the same absent the error. *See Hannemann v. Boyson*, 2005 WI 94, ¶57, 282 Wis. 2d 664, 698 N.W.2d 714. We consider the entire record to determine whether an error is harmless. *State v. Patricia A.M.*, 176 Wis. 2d 542, 556-57, 500 N.W.2d 289 (1993).

---

[4] Because Thunder did not ask the circuit court to cross-examine the Petitioner, he also forfeited the issue on appeal and fails to provide a persuasive reason that we should entertain the argument despite his failure to preserve it in the circuit court. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 (stating that appellate courts generally do not consider issues raised for the first time on appeal); *Schwittay v. Sheboygan Falls Mut. Ins. Co.*, 2001 WI App 140, ¶16 n.3, 246 Wis. 2d 385, 630 N.W.2d 772 (stating that "[a] party must raise an issue with sufficient prominence such that the [circuit] court understands that it is called upon to make a ruling").

## B. Additional Pertinent Background.

¶28 At the injunction hearing, the circuit court asked Thunder to respond to the Petitioner's testimony regarding the 2016 and 2018 incidents as follows:

> THE COURT: [L]et's focus in on these incidents. You know, you have the 2018 incident in the bedroom, I believe, shoving her backwards twice where she falls backwards. And then there's the 2016 incident. So let's focus on those two things first.
>
> What is your response to that? Do you admit that you did these things? Or do you deny it? Or was it something else?
>
> MR. THUNDER: Deny, absolutely, with the exception of 2016. I did plead guilty to the disorderly conduct because of the actions that I took after she left the apartment … so I did plead guilty to the disorderly conduct.

¶29 Regarding the 2016 incident, the court and Thunder had the following exchange:

> THE COURT: All right. You admitted that—and so I've looked it up now. You admitted that you pled to disorderly conduct and went to the First Offender Program; right?
>
> MR. THUNDER: Correct.
>
> THE COURT: And you pled guilty to disorderly conduct?
>
> MR. THUNDER: Correct.
>
> THE COURT: I'm looking at the Complaint in that case, and it has to do with a physical altercation that had occurred in the apartment it looks like that day. So just so the record's crystal clear, I'm looking at the Complaint in that case.
>
> MR. THUNDER: Yeah. And I can discuss 2016 as well.
>
> THE COURT: That's [case number].
>
> MR. THUNDER: Right.
>
> THE COURT: So you pled guilty to disorderly conduct?

MR. THUNDER:  Correct.

THE COURT:  Involving physical abuse of [the Petitioner] that also had a battery charge.

MR. THUNDER:  The battery charge was dropped.

THE COURT:  Yeah.  I understand that.  But they also charged disorderly conduct and you pled guilty.

MR. THUNDER:  Right…. I pled guilty based off of the actions that I took after she left the apartment…. I was disorderly with her belongings.

¶30    In the course of explaining its reasoning in granting the Petitioner's request for the injunction, the circuit court stated:

> I find that [the Petitioner's] explanation of what happened here is more—the more credible here.  And I also have, based on the testimony, and then I told everyone I was looking at it, the plea to a disorderly conduct in the [case number] case.  That was a domestic-related incident.  And so Mr. Thunder has previously entered a guilty plea to a domestic incident that's described in the Complaint as being principally a physical altercation.  It's not unusual for the State to dismiss the battery to try to give a first offender a benefit of some doubt in case they don't finish the First Offender Program, then they would only—"only" I use air quotes around—only have a disorderly conduct.  But I also find that [the Petitioner's] version is credible and therefore will issue the injunction.

### C.  The Circuit Court's "Independent Investigation," If Error, Was Harmless.

¶31    Thunder argues that the circuit court undertook an improper "independent investigation" when it "researched prior court actions involving the parties on the Internet."  However, Thunder fails to support his argument with any citation to the record showing that the court accessed the internet when it reviewed the complaint in the prior criminal case involving the parties.  Accordingly, we do not consider his argument further.  *See Jensen v. McPherson*, 2004 WI App 145, ¶6 n.4, 275 Wis. 2d 604, 685 N.W.2d 603 ("It is not this court's responsibility to

sift and glean the record in extenso to find facts supporting [the party's] argument."); ***State v. McMorris***, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (court of appeals "may choose not to consider … arguments that lack proper citations to the record").[5]

¶32 However, to the extent that Thunder is arguing more generally that the circuit court erred by engaging in an independent investigation of any kind, we conclude that, assuming without deciding that the court erred, any such error was harmless.

¶33 As detailed above, the circuit court proceeded to review the complaint in the 2016 case after Thunder affirmed that he had pleaded guilty to disorderly conduct in that case. The court later referenced Thunder's guilty plea to a domestic incident "that's described in the Complaint as being principally a physical altercation." However, the court also stated that it found credible the Petitioner's testimony as to what took place during the 2016 incident, and the court issued the injunction based on that testimony. The Petitioner's testimony, which the court credited, described how Thunder engaged in conduct that caused her physical harm, and that Thunder threatened harm to her dog. As explained above, that testimony sufficed to show reasonable grounds for issuance of the injunction, without any court review of the 2016 complaint. Accordingly, to the extent that the court erred in undertaking that review, any such error was harmless.

---

[5] Thunder also appears to fault the circuit court for independently determining that he had pleaded guilty to the disorderly conduct charge in the 2016 case. However, as shown above, Thunder himself so informed the court during the hearing, and the court expressly noted its awareness of Thunder's plea "based on [the] testimony." Whatever argument Thunder intends to make on this point is not adequately briefed, and we decline to consider it further. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").

**CONCLUSION**

¶34    For the reasons stated, we conclude that there was sufficient evidence to support the circuit court's issuance of the injunction, that the court did not deny Thunder the right to cross-examine the Petitioner, and that any error in the court's reviewing the complaint in a prior case involving the parties was harmless. Therefore, we affirm.

*By the Court*.—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE § 809.23(1)(b)5.