PULASKI, Plaintiff in error, v. STATE, Defendant in error.*

*June 3—June 30, 1964.*

* Motion for rehearing denied, without costs, on September 11, 1964, HEFFERNAN, J., not participating.

452

For the plaintiff in error there was a brief by *Runkel &
Runkel* of Port Washington, and oral argument by *Paul D.
Runkel.*

For the defendant in error the cause was argued by *Betty
R. Brown,* assistant attorney general, with whom on the
brief were *George Thompson,* attorney general, and *William
A. Platz,* assistant attorney general.

HALLOWS, J.   Reversible error is claimed in admitting
the confession of Pulaski in evidence because it was not the
voluntary product of his free and unconstrained will.  This
confession related only to four of the seven burglaries, *i.e.,*
those involved in counts 4, 5, 6, and 7.  It is argued the con-
fession was not voluntary because of the length of time
Pulaski was questioned, the interrogations took place in a
room 10 feet by 10 feet, he had little sleep until after 6
o'clock a. m. on the day he made the confession, nine differ-
ent officers questioned him, the only food he had from the
time of his arrest until his confession was a bologna sand-
wich and coffee at noon, that the police who questioned him
were physically larger than he was, and Pulaski had only an
eighth-grade education, and was not allowed to talk to
fellow prisoners.  It is also claimed Pulaski asked the police

for an attorney, which request was refused, and he was struck, kicked, and physically mistreated by the Milwaukee police.

In *State v. Hoyt* (1964), 21 Wis. (2d) 284, 128 N. W. (2d) 645, on rehearing, we pointed out that a confession to be saved from constitutional condemnation must be the result of a deliberateness of choice. Pulaski's confession seems to us to have been the product of his free and unconstrained will. It is not shown the interrogation even by several different police was of such constant duration as to affect Pulaski's mind and force him to confess against his better judgment. The confession occurred some seventeen hours after his arrest but Pulaski was not continuously interrogated for that period of time. This court does not approve of lengthy, continuous interrogations of an accused and a deprivation of sleep to break an accused down and which results in a confession being virtually wrung out of the accused. We find no such facts here.

Pulaski was arrested late at night, taken to the police station for interrogation, taken to his rooming house, and again taken back to the jail and again interrogated. When the night shift left, he was allowed to rest. It does not appear he was given any breakfast or that he wanted any. It does not appear how long he was permitted to sleep before being questioned by the day-shift detectives and the Ozaukee county officers. However, while being interrogated late in the afternoon with a stenographer present he confessed to four burglaries which the Milwaukee police were also interested in solving, and he was interrogated as to these; eventually over a period of months he confessed to some 23 or 24 burglaries in Milwaukee county. The interrogation of Pulaski strikes us under the circumstances as being a search for information in the process of investigation and not an attempt by the police to create written evidence for use against Pulaski at his trial.

We are not impressed in this case with the psychological factors relied on by Pulaski, namely, the room was only 10 feet by 10 feet, he was smaller in size than the policemen who interrogated him, he had but an eighth-grade education, and he had only a bologna sandwich and black coffee for lunch. Pulaski, a man of thirty-five years of age, had previous convictions and previous contacts with the police and the courts. This is not a case of the first offender as was the *Hoyt Case* but of a professional and a member of a ring or gang. Pulaski was not denied his right to talk to his counsel. He had no counsel and expected the police to furnish one upon his request. This, the police were under no duty to do. His physical treatment by the police was disputed in the testimony and both the trial court and the jury found against him. We accept their findings.

Of importance is the fact the confession of March 29th itself shows it to be "the voluntary product of a free and unconstrained will." The exhibit is in question and answer form. Pulaski was willing to disclose certain burglaries, but he refused to state who his accomplices were and expressly told the police he would not implicate anyone else. It is plain he told the police just what he wanted to tell them and no more. As stated in *Culombe v. Connecticut* (1961), 367 U. S. 568, 576, 81 Sup. Ct. 1860, 6 L. Ed. (2d) 1037, "However, a confession made by a person in custody is not always the result of an overborne will. The police may be midwife to a declaration naturally born of remorse, or relief, or desperation, or calculation." From what transpired later in the Milwaukee case, we believe the confession was a result of calculation which turned out to be a miscalculation from Pulaski's standpoint. But risks are not unknown to men who pursue crime. Incidentally we point out there were six other confessions made on three subsequent days extending over two months which were admitted in evidence. Five of

these confessions involved burglaries in Ozaukee county and no exception to their admissibility has been taken.

Pulaski contends the search of his dwelling was made without a search warrant and without his consent and the ring found was, therefore, erroneously received in evidence. The police testified in general terms that Pulaski was co-operative, led them to his room, and watched them make the search. Pulaski testified he did not consent and was taken to his dwelling in handcuffs. The trial court admitted the evidence for the reason Pulaski did not specifically object to the search.

Assuming the search was illegal and, therefore, the ring should not have been admitted in evidence, we consider the error to be harmless. The improper admission of evidence is not a ground for reversal unless the error affects a substantial right of the party. Sec. 274.37, Stats. Whether such harmless-error rule can be applied to the admissibility of evidence seized in an illegal search has not been decided by the United States supreme court. We see no reason why the statutory harmless-error rule should not apply to error founded on constitutional rights. Certainly not all violations of constitutional rights are prejudicial and require reversal. Nor does public policy demand the automatic reversal of a conviction because of a violation of a constitutional right in order to promote the recognition and the enforcement of such rights. It was pointed out by the minority of the court in *Fahy v. Connecticut* (1963), 375 U. S. 85, 94, 84 Sup. Ct. 229, 234, 11 L. Ed. (2d) 171, 177, that there is no necessary connection between the fact that evidence is unconstitutionally seized and the degree of harm caused by its admission because the question of harm turns not on the reasons for inadmissibility but on the effect of the evidence in the particular case. In *People v. Parham* (1963), 33 Cal. Rptr. 497, 384 Pac. (2d) 1001, the court made a distinction between an involuntary con-

fession and other illegally obtained evidence and held a check obtained in violation of due process and improperly admitted in evidence was harmless error in the context of the facts before it.

In this case it is true the illegal evidence is harmful and the error affects a substantial right so far as count 1 is concerned and if Pulaski were serving the sentence on that count alone it would require reversal and a new trial on that charge. However, in fact the error is harmless because Pulaski was found guilty on six other counts and was sentenced to identical terms on each of ten years to be served concurrently. Consequently, the conviction and sentence on count 1 does not prejudice Pulaski if he is properly serving concurrent sentences of the same duration on valid convictions on the other counts, which we believe he is. It has been held that when a defendant has been convicted on a number of counts and is given concurrent sentences of similar duration, there is no prejudice requiring a reversal for error if there is a valid conviction on any of the counts. *Mueller v. State* (1932), 208 Wis. 550, 243 N. W. 411; *United States v. Trenton Potteries Co.* (1927), 273 U. S. 392, 47 Sup. Ct. 377, 71 L. Ed. 700. See *Hirabayashi v. United States* (1943), 320 U. S. 81, 63 Sup. Ct. 1375, 87 L. Ed. 1774; *United States v. Johnson* (1943), 319 U. S. 503, 63 Sup. Ct. 1233, 87 L. Ed. 1546; 3 Am. Jur., Appeal and Error, p. 662, sec. 1149.

During the trial on 18 occasions while the jury was in the box there were proceedings between counsel and the court off the record. This is an undesirable practice in the presence of the jury because the record does not show what the jury presumably heard and this court does not have a complete record before it. If a matter is to be heard off the record, it should be outside the hearing of the jury. However, in this case we find no reversible error because Pulaski's trial

counsel testified at the hearing on the motion for new trial that nothing was said off the record which called for an objection on his part and if there had been he could have made such an objection on the record. We must assume the omitted matter was not proof or prejudicial to Pulaski.

Pulaski argues the trial court made remarks in the presence of the jury which prejudiced his rights. Several of these remarks had to do with controlling the unnecessary repetition of testimony. In several instances the court differed with counsel over previous testimony. In one instance the court in referring to the testimony of a detective stated the man held a responsible position and the court was inclined to say he was telling the truth. Some of the remarks, no doubt, indicate an impatience with the method of examination by the defense counsel. In a jury trial, a trial judge must be ever careful not by word or action to unconsciously influence the jury or to convey any impression contrary to his impartial status. While we cannot approve the trial court's arguing with counsel over what the testimony showed or commenting on the veracity of a witness before a jury, we cannot find these isolated remarks in view of the whole testimony and the instructions on the weight and credit to be given to witnesses had any prejudicial effect on the jury or denied Pulaski of his constitutional right to a fair and impartial trial.

The last contention of Pulaski is that his rights were prejudiced by an altercation between witnesses in the presence of the jury while the trial judge and the attorneys were absent from the courtroom. During the trial while the judge and the attorneys were conferring in chambers and the jury was in the box, a state and a defense witness engaged in a loud and heated argument of several minutes duration. There is testimony that during the argument a police officer who testified for the state called the defense witness a "liar" and "one of the Kopacka gang." Other testimony

is to the effect that this defense witness called the police officer a liar. The foreman of the jury testified, in effect, that the argument lasted only a minute or two while the members of the jury were conversing with each other and there was other loud talking in the courtroom. He also testified nothing he heard influenced him in his decision. No other member of the jury testified.

It would seem the general effect of this altercation was a witness for the state and one for Pulaski were in disagreement over certain facts. This, of course, was apparent from their testimony on the stand. We point out in criminal trials police officers who are actively engaged in the prosecution as part of their official duties may not by their activities and attitude indicate a partisan interest in the outcome of the case. Their conduct so far as it relates to a question of prejudicial effect on the jury must be considered as conduct of the prosecution. *Surma v. State* (1951), 260 Wis. 510, 51 N. W. (2d) 47. However, we do not find on the record before us that Pulaski was prejudiced by the altercation.

*By the Court.*—Order affirmed.