STATE, Respondent, v. SPRING, Appellant.

*No. State 81. Argued September 14, 1970.—Decided October 9, 1970.*
(Also reported in 179 N. W. 2d 841.)

For the appellant there was a brief by *Myron E. LaRowe* and *Stevens & LaRowe,* all of Reedsburg, and oral argument by *Myron E. LaRowe.*

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J. The first contention concerns the sufficiency of the evidence to convict. In the last week of March, 1966, Spring and a Mrs. Marlene Strege, who were not married, came to Necedah from Dallas, Texas. They had very little money and their car had broken down, but Mrs. Strege's father allowed Spring to use his 1955 Dodge, which had a white top and a pinkish faded old body and he permitted them to live in a house which he owned. Spring obtained employment as a welder in nearby New Lisbon, and on April 7th he received an advance on his wages in the form of a check for $25 which he cashed at the Alexandrian Tavern. He gave $20 to Mrs. Strege but after an argument he left in the Dodge and was not seen again by either Mrs. Strege or her father.

During that night some of his clothing, his welding supplies, and one of Mrs. Strege's suitcases disappeared from the house and the Alexandrian Tavern was burglarized. Several days later the Dodge was found at the railway depot in Tomah. Taken from the Alexandrian Tavern were $1,170 in rolled coin including $250 in half-dollars, which were exceedingly scarce at the time, and a portable metal lockbox in which some of these coins were kept. An investigation outside the tavern disclosed footprints leading from the sidewalk to a broken window on the side of the building. Samples of this soil and glass were taken for analysis.

On the morning of April 8th between 6 and 7 a. m., a man purchased a one-way ticket from Tomah to New

York from the ticket agent at the depot of the Milwaukee Road. The agent remembered the transaction because 58 half-dollars were used in part to pay for the ticket. The purchaser asked if there was a locker in the station in which he could store a bag and upon being told there was none, the man left the depot with his suitcase and entered the pink and white Dodge.

On April 10th Mrs. Strege opened a drawer in her stove and she found a metal box which she had never seen before. Sometime later at the request of the under-sheriff Mrs. Strege turned the box over to him. About the same time the Necedah chief of police came to the house and asked if there was a pair of boots or shoes around. Spring had worn boots when he worked and there was a pair of engineer's boots on the porch. Upon request of the police Mrs. Strege's father said the police could take the boots.

At the trial the owner of the tavern established the metal box found by Mrs. Strege was the same type of box as was stolen from his tavern and his key opened the box; but the defense produced a witness in the office-supply business whose key also opened the box. Testimony by the defense disclosed that while the boots could be worn by Spring they were too small for him. The soil and glass found on the boots were compared by the state crime laboratory to the soil and glass samples gathered from the scene of the crime. This comparison revealed the sands were completely consistent in color and the particles of glass were of the same origin. The defense argued the tests used were not the most reliable. The law, however, does not require the most reliable test—the degrees of reliability go to the probative value of the test and weight the trier of the facts should give to the evidence.

We think the evidence was sufficient for conviction. The test as defined in *Lock v. State* (1966), 31 Wis. 2d 110, 114, 115, 142 N. W. 2d 183, is "whether this court can conclude the trier of the facts could, acting rea-

sonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true." A jury acting reasonably could be convinced of Spring's guilt beyond a reasonable doubt.

Spring argues that circumstantial evidence by its nature cannot be sufficient to prove guilt beyond a reasonable doubt, relying on *Kollock v. State* (1894), 88 Wis. 663, 60 N. W. 817, and *Colbert v. State* (1905), 125 Wis. 423, 104 N. W. 61. But this court in *State v. Johnson* (1960), 11 Wis. 2d 130, 104 N. W. 2d 379, in considering the relationship between these two cases' standard of sufficiency and circumstantial evidence, ruled they did not require circumstantial evidence to exclude every hypotheses of innocence but only every reasonable hypotheses of innocence. Circumstantial evidence may meet the required standard of proof and is often as convincing as catching the little culprit with his grasping hand in the cookie jar. *State v. Johnson, supra; State v. Dombrowski* (1969), 44 Wis. 2d 486, 171 N. W. 2d 349; *State v. Kitowski* (1969), 44 Wis. 2d 259, 170 N. W. 2d 703.

Spring argues the engineer's boots which were put in evidence were obtained by an illegal search and seizure. But this is not a case where entrance to one's home voluntarily obtained was followed by a secret search in the owner's absence. *See: Gouled v. United States* (1921), 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647. The boots were in open view on a porch of the house and voluntarily given to the sheriff; there was no search. *See United States v. Pate* (7th Cir. 1963), 324 Fed. 2d 934, where the police went to defendant's house and were voluntarily given a bloodstained shirt by defendant's wife.

It is argued it was error to admit in evidence the cash box and boots because they were not sufficiently connected with the scene of the crime or with Spring and therefore had no probative value. This real evidence was admissible; the box and boots were identified as

the articles they purported to be and each was shown by valid inference to be connected with the crime or with the accused. The box was of the same type and the tavernkeeper's key opened it. The engineer's boots were of the type worn by Spring and found on the porch of his home and were identified by glass and soil tests as those present at the scene of the crime. There was a reasonably probable identification of evidence having probative value. The identification is not required to be positive, absolute, certain, or wholly unqualified. 22A C. J. S., *Criminal Law*, p. 949, sec. 709. *See United States v. Panczko* (7th Cir. 1965), 353 Fed. 2d 676, 679 (keys in evidence were similar to those given the officer) ; and *People v. Smith* (1965), 63 Ill. App. 2d 369, 211 N. E. 2d 456, 459 (money found in defendant's home four days after crime lacked characteristics sufficient to distinguish it from any other money).

During the closing arguments to the jury, the district attorney stated, "We have not had the benefit of any statement on the part of the defendant," and also, "We have had no denials of the assertions that have been made on the part of the witnesses who have come in and prosecuted this action or been called as witnesses by the prosecution of this action." The court ordered the statements stricken from the record and properly instructed the jury the defendant was not compelled to testify, his failure to do so did not create any presumption against him, and the jury was not to draw any inference therefrom or to consider the failure to take the witness stand as an admission. The district attorney's remarks, contrary to the argument of the state, imply a presumption of guilt. Making such remarks was characterized as gross impropriety in *Martin v. State* (1891), 79 Wis. 165, 48 N. W. 119. *See: State v. Jackson* (1935), 219 Wis. 13, 261 N. W. 732; *Dunn v. State* (1903), 118 Wis. 82, 94 N. W. 646; *Werner v. State* (1926), 189 Wis. 26, 206 N. W. 898. Such remarks by a district attorney violate sec. 885.13 (2),

Stats., and more recently such remarks have been held violative of the guarantee against self-incrimination in the fifth amendment to the United States Constitution. *Griffin v. California* (1965), 380 U. S. 609, 85 Sup. Ct. 1129, 14 L. Ed. 2d 106, rehearing denied, 381 U. S. 957, 85 Sup. Ct. 1797, 14 L. Ed. 2d 730.

The question presented is whether such comments are irreparably prejudicial and require a reversal or whether they may be considered harmless error. On this problem, *see* Annot., *Violation of Federal Constitutional Rule (Griffin v. California) Prohibiting Adverse Comment by Prosecutor or Court Upon Accused's Failure to Testify, as Constituting Reversible or Harmless Error,* 24 A. L. R. 3d 1093. In *State v. Jackson, supra,* where the court failed to condemn such remarks and specifically instruct the jury on the rights of accused and to ignore the remarks, the court's merely sustaining an objection was not sufficient to counteract the prejudicial effect of the remarks.

Prior to *Chapman v. California* (1967), 386 U. S. 18, 87 Sup. Ct. 824, 17 L. Ed. 2d 705, rehearing denied, 386 U. S. 987, 87 Sup. Ct. 1283, 18 L. Ed. 2d 241, this court decided a violation of a constitutional guarantee was subject to our harmless-error rule promulgated in sec. 274.37, Stats. *Pulaski v. State* (1964), 24 Wis. 2d 450, 129 N. W. 2d 204. In *Chapman* the supreme court held a violation of *Griffin* could constitute harmless error but the question was one of federal law. That case laid down the requirement upon appellate courts that before such an error could be held harmless the appellate court must be able to declare its belief that the error was harmless beyond a reasonable doubt. Consequently, in this case we do not apply the usual appellate test to a fact finding by the trial court, namely, whether the finding the error was harmless is against the great weight and clear preponderance of the evidence. Nor do we test the ruling of the trial court by the abuse of discretion rule. In effect we start with the

premise the constitutional error was prejudicial and the prosecution has the burden of showing it was harmless beyond a reasonable doubt. With such a burden, one wonders why district attorneys run the risk of a reversal and the waste of time and money in commenting even indirectly on the failure of the accused to take the witness stand.

Spring argues *Fontaine v. California* (1968), 390 U. S. 593, 88 Sup. Ct. 1229, 20 L. Ed. 2d 154, rehearing denied, 391 U. S. 929, 88 Sup. Ct. 1813, 20 L. Ed. 2d 670, requires that the burden of proving this error harmless is greater because of the circumstantial evidence involved. That argument is a misinterpretation of the case. The burden may be more difficult but it is not greater. *Fontaine* does not impose a more vigorous test than *Chapman* but requires that the evidence against the accused must be incorporated into the *Chapman* test. Consequently, in analyzing this problem we must consider the character of the remarks in the context in which they were made, the admonition by the court to the jury to disregard such remarks and its probable effect, the strength of the evidence on the issue of guilt and all other facts which may be relevant in determining what effect the improper remarks had upon the jury.

After an analysis and a consideration of these remarks by the district attorney in the context of the entire trial, their indirect nature and implication, the strength of the circumstantial evidence against Spring and the fact the defense counsel on *voir dire* raised the problem when he questioned at least one juror that if Spring did not testify whether the juror would follow the court's instruction that no inference of guilt could be drawn from such failure, we come to the belief beyond a reasonable doubt that the remarks were harmless.

*By the Court.*—Order and judgment affirmed.