Michael J. KOFFMAN, Plaintiff-Appellant,

v.

Jeremy J. LEICHTFUSS and State Farm Mutual
Automobile Insurance Company, Defendants-
Respondents,

FARMERS AUTOMOBILE INSURANCE ASSOCIATION and Wis-
consin Central Transportation Corporation,
Defendants.

Supreme Court

*No. 99–0380. Oral argument March 6, 2001.—Decided July
12, 2001.*

2001 WI 111

(Also reported in 630 N.W.2d 201.)

31

36

For the plaintiff-appellant there were briefs by *Linda S. Isnard, Gilbert J. Berthelsen* and *von Briesen, Purtell & Roper, S.C.*, Racine, and oral argument by *Linda S. Isnard.*

For the defendants-respondents there was a brief by *James C. Herrick, Jr., John W. Herrick* and *Herrick Law Offices, S.C.*, Fond du Lac, and oral argument by *James C. Herrick, Jr.*

An amicus curiae brief was filed by *Edward E. Robinson* and *Cannon & Dunphy, S.C.*, Brookfield, and *Brian H. Sande* and *Doar, Drill & Skow, S.C.*, New Richmond, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. ANN WALSH BRADLEY, J. In this personal injury action, the plaintiff, Michael Koffman, appeals the judgment of the circuit court limiting his recovery of medical expense damages to the amount he and his insurers paid.[1] He contends that he is entitled to recover the reasonable value of the medical services rendered regardless of amounts paid by himself or his insurers. The circuit court, consistent with the argument of the defendants, Jeremy Leichtfuss (Leichtfuss) and his insurer, held that the plaintiff's insurers' subrogation rights operate to limit the medical expense damages to the amounts actually paid.

¶ 2. We conclude that the plaintiff is entitled to seek recovery of the reasonable value of the medical services, without limitation to the amounts paid. Limiting the plaintiff's potential recovery to the amounts

---

[1] The plaintiff appeals a judgment entered in the Circuit Court for Fond du Lac County, Judge Henry B. Buslee presiding. This case is before us upon certification of the court of appeals pursuant Wis. Stat. § 809.61 (1997–98).

37

paid is contrary to the Wisconsin rule of valuation of medical expense damages, the collateral source rule, and principles of subrogation. Because we also conclude that the presentation of inadmissible evidence of payments made by the plaintiff's insurers was prejudicial, we reverse the judgment of the circuit court and remand the cause for a new trial on the issue of medical expense damages.

I

¶ 3. This case arises from a 1994 automobile collision between the plaintiff and Leichtfuss. Following the accident, the plaintiff received treatment from numerous physicians and specialists for an injury to his spine that he claims resulted from the accident. The total amount billed by the plaintiff's health care providers was $187,931.78. In 1997, the plaintiff brought this negligence action, seeking recovery of the medical expenses amassed in treating the injuries suffered as a result of the accident.[2]

¶ 4. The cost of the plaintiff's treatment was primarily paid by his insurers.[3] As part of his employee-benefits plan at Wisconsin Central Transportation Corporation (Wisconsin Central), the plaintiff received health care coverage. Wisconsin Central provided this

---

[2] The plaintiff also sought and received damages other than the medical expense damages. However, the award of those damages is not relevant to our discussion.

[3] For simplicity's sake, throughout this decision we refer to Wisconsin Central, which provided plaintiff's health care coverage through its self-funded plan, and Farmers, which provided medical payments coverage through plaintiff's auto insurance, as plaintiff's "insurers." We also use the phrases "insurer" and "insured" to generally describe the relationship in any of a broad array of health care finance arrangements.

coverage though its self-funded plan. Through certain contractual relationships with the plaintiff's health care providers, Wisconsin Central received the benefit of reduced "contracted rates" and was able to satisfy its liability for the amounts billed by the providers with total payments of $62,324.00.

¶ 5. In addition to the coverage provided by Wisconsin Central, the plaintiff's automobile insurance carrier, Farmers Automobile Insurance Association (Farmers), provided medical payments coverage to the plaintiff. Under this coverage, Farmers paid $1,869.15 in medical expenses for accident-related treatment. The plaintiff personally paid $1,869.43 in deductibles, co-payments, and out-of-pocket expenses.

¶ 6. Wisconsin Central and Farmers were named in the plaintiff's complaint as parties with a subrogated interest in the claim for medical expenses. In answering the complaint, Wisconsin Central and Farmers asserted their subrogation interests in the amounts they had paid on the plaintiff's behalf.[4]

¶ 7. Early in this litigation the parties winnowed the disputed issues by resolving several matters. First, Leichtfuss admitted negligence in causing the 1994 accident. Second, in a pre-trial stipulation, the defendants agreed that the amounts billed by plaintiff's health care providers were reasonable. The remaining disputed issues with respect to the medical expenses

---

[4] Wisconsin Central's subrogation interest derived from a clause in its policy. That policy was made part of the record. The record provided to this court contains no copy of the Farmers auto policy; however, in its answer, Farmers asserted that its subrogation rights arise "by the terms of its policy."

There has never been a dispute between the plaintiff and defendants regarding the existence of Wisconsin Central's and Farmers' subrogation interests.

were (1) whether as a factual matter the medical treatment for which the plaintiff was billed was caused by the accident; and (2) whether the plaintiff was legally entitled to seek recovery of the reasonable value of the medical services rendered or whether the medical expense damages were limited to the amounts paid by himself and his insurers.

¶ 8. The scope of the allowable recovery of medical expenses first arose as an issue when the defendants pursued a motion in limine seeking exclusion of all evidence of amounts billed to the plaintiff by his medical providers. The defendants insisted that under this court's decision in *Lambert v. Wrensch*, 135 Wis. 2d 105, 399 N.W.2d 369 (1987), evidence of medical expenses in this case must be limited to that actually paid by the subrogated insurers. The defendants thus sought to limit the evidence regarding medical expenses to the amounts paid. The legal justification for their motion to limit such evidence was that "the collateral source rule does not apply where subrogated carriers have made payments upon medical expenses."

¶ 9. The plaintiff asserted that the collateral source rule applied, rendering evidence of payments made by his insurers irrelevant and inadmissible. He argued that he was entitled to recover the reasonable value of the medical services resulting from the accident, regardless of the amounts paid by Wisconsin Central and Farmers or any subrogation interests they may have.

¶ 10. The circuit court granted the defendant's motion. Concluding that the collateral source rule did not apply, the circuit court limited the evidence of medical expenses to the amount actually paid by the subrogated insurers. Additionally, the court specifi-

cally excluded a portion of a videotaped deposition of Dr. Dennis Maiman, plaintiff's treating physician and expert witness. In the excluded portion, Dr. Maiman examined an exhibit itemizing the $187,931.78 in charges billed by the health care providers. He testified that it was his opinion to a reasonable degree of medical probability that the amounts charged were "reasonable and within the expected and accepted ranges" and that the treatment represented by the bills was "necessitated by the accident."

¶ 11. The case then proceeded to a trial on the issue of damages. During the parties' presentation of evidence, the defendants offered evidence of the amount paid by Wisconsin Central. The plaintiff, however, was prevented by the circuit court's ruling from offering his own evidence regarding the amounts billed by the health care providers.

¶ 12. The parties also brought forth competing evidence relating to the causal link between the accident and the treatment at issue. The plaintiff presented Dr. Maiman's video deposition explaining the plaintiff's treatment history. However, consistent with the pretrial order, the jury was not shown his conclusion that the treatment and medical bills were caused by the accident. The defendants offered the testimony of an independent medical examiner, who concluded that the treatment at issue was for preexisting conditions unrelated to the 1994 accident.

¶ 13. After the close of evidence, the circuit court reconsidered its decision to exclude evidence relating to the amounts billed by the health care providers. During the jury instruction conference, the court ruled that the plaintiff would be allowed to argue to the jury that he was entitled to the full $187,931.78 in medical expenses. The defendants were allowed to argue that

the plaintiff was entitled to recover only the amount actually paid. Additionally, the court reversed its earlier decision to exclude Dr. Maiman's opinion that the medical bills were reasonable and caused by the accident. The court decided that prior to instructing the jury it would read the previously excluded portion of Dr. Maiman's deposition.[5]

¶ 14. In their closing arguments, the parties asked the jury to award medical expenses consistent with their respective theories of valuation. The plaintiff asked the jury to return a medical expense award in the amount of $187,931.78, directing the jury's attention to the itemization of medical expenses relied upon by Dr. Maiman. The defendants argued that while the plaintiff's health care providers did charge the amount requested by the plaintiff, "those charges weren't paid." Defendants' counsel then recited the dollar amounts actually paid by the plaintiff and his insurers. The defendants also argued that not all of the treatment was caused by the accident.

¶ 15. During their deliberations, the jurors returned a question to the circuit court specifically requesting information regarding the amounts paid for medical expenses:

> We would like amount that was actually paid out for Medical Expenses to date.

---

[5] Also during the instruction conference, the status of the subrogated carriers' interests was clarified. Wisconsin Central assigned the entirety of its rights to the plaintiff. Further, while Farmers did not assign its rights to the plaintiff, the defendants agreed that the amount Farmers paid was reasonable and that the underlying treatment for which Farmers paid was as a result of the accident.

In response, the circuit court informed the jury that Wisconsin Central paid $62,324.54, Farmers paid $1,869.15, and the plaintiff paid $1,869.43.

¶ 16. The jury returned a verdict awarding the plaintiff medical expenses in the amount of $98,664.18. In a post-verdict motion, the defendant sought a reduction of the jury's medical expense award to $66,062.58, the amount paid by the plaintiff and his insurers. Again relying upon *Lambert v. Wrensch*, the defendants argued that the plaintiff was limited in recovery to the amounts paid. The plaintiff responded with his own motion seeking to amend the jury's award to $187,931.78 on the grounds that no credible evidence existed to support a jury verdict of less than that amount.

¶ 17. The circuit court agreed with the defendants and concluded that under *Lambert* the collateral source rule was inapplicable. The circuit court thus reduced the medical expense damage award to $66,062.58. After the plaintiff unsuccessfully pursued a motion for reconsideration, the circuit court entered a judgment reflecting the reduced amount of medical expense damages.

¶ 18. The plaintiff appealed and the court of appeals certified this case for our review. In doing so, the court of appeals noted a tension between the circuit court's reliance on this court's decision in *Lambert* and our recent decision in *Ellsworth v. Schelbrock*, 2000 WI 63, 235 Wis. 2d 678, 611 N.W.2d 764. Specifically, the court of appeals expressed difficulty in reconciling language in *Lambert* that suggests the collateral source rule is inapplicable where subrogation exists with our application of the collateral source rule to Medical Assistance benefits in *Ellsworth* and statements in

that opinion regarding the applicability of the collateral source rule to insurance payments.

¶ 19. Our review of this case requires us to answer two questions. First, we must determine whether the plaintiff is entitled to seek recovery of the reasonable value of the medical services rendered, without limitation to the amounts paid. Second, we must determine whether the jury's award of medical expense damages may be sustained.

## II

██

¶ 20. The determination of whether the plaintiff is entitled to seek recovery for the reasonable value of the medical services rendered or whether his insurers' subrogation rights limit the plaintiff's recovery to the amount actually paid by himself and his insurers presents a question of law. *See Ellsworth,* 2000 WI 63 at ¶ 6. We review such a question of law independently of the determination of the circuit court. *Miller v. Thomack,* 210 Wis. 2d 650, 658, 563 N.W.2d 891 (1997). In answering this question we are called upon to clarify and resolve issues involving the recovery of medical expenses that frequently arise under the modern system of health care provision and financing.

¶ 21. The modern health care system employs a myriad of health care finance arrangements. As part of the system, negotiated and contracted discounts between health care providers and insurers are increasingly prevalent. Pursuant to these agreements, an insurer's liability for the medical expenses billed to its insured is often satisfied at discounted rates, with the remainder being "written-off" by the health care provider.

¶ 22. The case at hand requires us to examine the implications of such arrangements on medical expense damages in a personal injury action in Wisconsin. Here, Wisconsin Central received the benefit of reduced contracted rates. The plaintiff contends that he is nonetheless entitled to seek the reasonable value of medical services rendered. He maintains that the collateral source rule renders irrelevant any payments made by his insurers. The defendants seek to limit the medical expenses to those amounts paid, and thus prevent the plaintiff from recovering any amount written off by the health care providers. The defendants base their argument on the plaintiff's insurers' subrogation rights.

¶ 23. As the parties' positions illustrate, this case presents us with the intersection of three concepts central to the law of damages: the Wisconsin rule of valuation of medical expense damages, the collateral source rule, and subrogation. Last term in *Ellsworth v. Schelbrock*, 2000 WI 63, we addressed the interrelation of these three concepts in a related context. The court of appeals correctly noted that our discussion in *Ellsworth* bears on our resolution of this case.

¶ 24. In *Ellsworth*, the injured plaintiff was the recipient of medical treatment, the cost of which was paid by Medical Assistance. *Id.* at ¶ 4. The medical services were valued at almost $600,000; however, Medical Assistance was only required to pay approximately $350,000 to satisfy the plaintiff's liability. *Id.* The defendant argued that the plaintiff's medical expense damages must be limited to the amounts paid by the Medical Assistance program. *Id.*

¶ 25. Applying long-standing principles of Wisconsin law, we concluded that the plaintiff was entitled to the reasonable value of the medical services ren-

dered, without limitation to the amounts paid by Medical Assistance. In reaching this conclusion the court emphasized that the standard for valuation of medical expenses is the reasonable value of medical services rendered. *Id.* at ¶¶ 14–15. The court also determined that the collateral source rule applied and prevented the plaintiff's recovery from being reduced by the payments made by Medical Assistance. *Id.* at ¶ 17. Finally, we rejected the defendant's arguments that the state's statutorily mandated subrogation interest operated to limit the defendant's potential liability to the amounts paid by the Medical Assistance program. *Id.* at ¶ 21.

¶ 26. The same established rules of the law of damages that dictated the result in *Ellsworth* also direct the result in today's case. The rule of valuation of medical expense damages, the collateral source rule, and the principles of subrogation lead us to the conclusion that the plaintiff may seek recovery of the reasonable value of medical services rendered, without limitation to the amounts actually paid by the plaintiff's insurers. We explain this result by examining these three legal principles and their interaction and application to the facts at hand.

¶ 27. We first address valuation of medical expense damages. In Wisconsin, a plaintiff who has been injured by the tortious conduct of another may recover the reasonable value of medical services rendered. *Thoreson v. Milwaukee & Suburban Trans. Corp.*, 56 Wis. 2d 231, 243, 201 N.W.2d 745 (1972); *McLaughlin v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 31 Wis. 2d 378, 395, 143 N.W.2d 32 (1966) (quoting 22 Am. Jur. 2d *Damages* § 207 (1965)). In *Thoreson*, 56 Wis. 2d at 243, and again in *Ellsworth*,

2000 WI 63, ¶ 15, we explained that while the actual amount paid for medical services may reflect the reasonable value of the treatment rendered, the focus is on the reasonable value, not the actual charge. In other words " '[t]his is a recovery for their value and not for the expenditures actually made or obligations incurred.' " *McLaughlin*, 31 Wis. 2d at 395 (quoting 22 Am. Jur. 2d *Damages*, § 207).[6]

¶ 28. In the instant case, the parties stipulated that the amounts charged by plaintiff's health care providers were reasonable. Thus, assuming that all the medical expenses for which the plaintiff claims recovery resulted from the 1994 accident, the plaintiff would be entitled to an award of $187,931.78 in medical expense damages.

¶ 29. The second, related principle implicated by today's decision is the collateral source rule. Under the collateral source rule a plaintiff's recovery cannot be reduced by payments or benefits from other sources. The collateral source rule prevents any payments made on the plaintiff's behalf or gratuitous benefits received by the plaintiff from inuring to the benefit of a defendant-tortfeasor. *Payne v. Bilco*, 54 Wis. 2d 424, 433, 195 N.W.2d 641 (1972). The rule is grounded in the long-standing policy decision that should a windfall arise as a consequence of an outside payment, the party to profit from that collateral source is "the person who has been injured, not the one whose wrongful acts caused the injury." *Campbell v. Sutliff*, 193 Wis. 370, 374, 214 N.W. 374 (1927), *overruled on other grounds*

---

[6] *See also Restatement (Second) of Torts* § 924 cmt. f ("The value of medical services made necessary by the tort can ordinarily be recovered although they have created no liability or expense to the injured person. . . .").

*Powers v. Allstate Ins. Co.*, 10 Wis. 2d 78, 92, 102 N.W.2d 393 (1960). In *Ellsworth*, we further explained the policy basis for the collateral source rule:

> The tortfeasor who is legally responsible for causing injury is not relieved of his obligation to the victim simply because the victim had the foresight to arrange, or good fortune to receive, benefits from a collateral source for injuries and expenses.

2000 WI 63, ¶ 7.[7]

■

¶ 30. In the context of medical expense damages, the collateral source rule allows the plaintiff to seek recovery of the reasonable value of medical services without consideration of gratuitous medical services rendered or payments made by outside sources on the plaintiff's behalf, including insurance payments. *Ellsworth*, 2000 WI 63, ¶ 10; *Thoreson*, 56 Wis. 2d at 243–45; *Restatement (Second) of Torts* § 920A cmt. c.[8] Where the plaintiff's health care providers settle the

---

[7] We note that the court of appeals has limited the collateral source rule where the "plaintiff creates the windfall by his own act." *Oliver v. Heritage Mut. Ins. Co.*, 179 Wis. 2d 1, 23, 505 N.W.2d 452 (Ct. App. 1993) (holding that plaintiff whose medical bills were discharged in bankruptcy could not recover those medical expense damages).

[8] We have cited *Restatement (Second) of Torts* § 920A with approval. *See Ellsworth v. Schelbrock*, 2000 WI 63, ¶ 8, 235 Wis. 2d 678, 611 N.W.2d 764. That provision reads, in pertinent part:

§ 920A. Effect of Payments Made to Injured Party

. . .

(2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

plaintiff's medical bills with the plaintiff's insurers at reduced rates, the collateral source rule dictates that the defendant-tortfeasor not receive the benefit of the written-off amounts.[9] The benefit of the reduced payments inures solely to the plaintiff.

¶ 31. Applying the collateral source rule to payments that have been reduced by contractual arrangements between insurers and health care providers assures that the liability of similarly situated defendants is not dependent on the relative fortuity of the manner in which each plaintiff's medical expenses are financed. One plaintiff may be uninsured and receive the benefit of Medical Assistance, another's insurer may have paid full value for the treatment, and yet another's insurer may have received the benefit of reduced contractual rates. Despite the various insurance arrangements that exist in each case, the factor controlling a defendant's liability for medical expenses is the reasonable value of the treatment rendered.

¶ 32. In the case before us, as in *Ellsworth*, the collateral source rule is fully operational. It prevents the discounted rates paid on the insurer's behalf from affecting the plaintiff's recovery of the reasonable value of medical services rendered. The rule renders irrelevant the amounts of the collateral source payments, *i.e.*, the $62,324.00 paid by Wisconsin Central and the $1,869.43 paid by Farmers, and precludes a reduction in medical expense damages based on those payments.

---

[9] *See Acuar v. Letourneau*, 531 S.E.2d 316, 322–23 (Va. 2000) ("The portions of medical expenses that health care providers write off constitute 'compensation or indemnity received by a tort victim from a source collateral to the tortfeasor. . . .' " (quoted source omitted)).

¶ 33. The interaction of the collateral source rule with the third legal principle implicated today, subrogation, has engendered the confusion that has arisen in the case at hand. By virtue and to the extent of payments made on behalf of another, a subrogated party obtains a right of recovery in an action against a third-party tortfeasor and is a necessary party in an action against such a tortfeasor. *Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 775, 501 N.W.2d 788 (1993); *Patitucci v. Gerhardt*, 206 Wis. 358, 362, 240 N.W. 385 (1932). Subrogation exists to ensure that the loss.is ultimately placed upon the wrongdoer and to prevent the subrogor from being unjustly enriched through a double recovery, *i.e.*, a recovery from the subrogated party and the liable third party. *Cunningham v. Metropolitan Life Ins. Co.*, 121 Wis. 2d 437, 444, 360 N.W.2d 33 (1985).

¶ 34. It is undisputed that the plaintiff's insurers have valid subrogation interests that they have asserted and pursued in this action. However, the consequence of those subrogation rights is in dispute. The defendants assert that the insurers' subrogation rights limit the recoverable medical expense damages to the amounts actually paid. We do not find the insurers' subrogation interests to have such an effect.

¶ 35. The defendants offer two theories as to how the insurers' subrogation rights operate to limit the recoverable medical expenses. One line of argument requires us to examine the effect, if any, of the insurers' subrogation rights on the collateral source rule. With their second line of argument, the defendants advance that the mechanics of subrogation limit the medical expense damages to the amounts paid.

¶ 36. We begin with the argument that under *Lambert v. Wrensch*, 135 Wis. 2d 105, the collateral source rule is inapplicable in this case. In *Lambert*, we explained that an insurer's subrogation rights may trump the collateral source rule and prevent a plaintiff from recovering from a defendant-tortfeasor the amounts paid by the subrogated party. The subrogated insurer in that case had paid the entirety of the medical expenses that the plaintiff sought from the defendant. Because the statute of limitations had expired, however, the insurer was unable to exercise its subrogation rights. *Id.* at 118–19.

¶ 37. Relying upon *Heifetz v. Johnson*, 61 Wis. 2d 111, 124–25, 211 N.W.2d 834 (1973), where a similar problem arose, the *Lambert* court concluded that the subrogated insurer's inability to recoup the amounts paid presented the potential for double recovery. *Lambert*, 135 Wis. 2d at 118–19. Because the subrogation rights could not be exercised by operation of law, the insured "had to recognize the payments received from the insurer." *Id.* In other words, the risk of double recovery defeated the collateral source rule.

¶ 38. The *Lambert* decision also contains language that might suggest that the collateral source rule is wholly inapplicable where an insurer has a subrogated interest. *Id.* at 121. Indeed, such a characterization of the *Lambert* decision was repeated in *Ellsworth*. 2000 WI 63 at ¶ 18. Focusing upon this language in *Lambert*, the defendant argues that the circuit court correctly determined that the insurers' subrogation rights rendered the collateral source rule inapplicable in the case at hand.

¶ 39. *Lambert* should not be read so broadly. The language of *Lambert* suggests that the holding is limited to its facts. *Lambert*, 135 Wis. 2d at 121 ("[W]here

subrogation is present, *as here,* the collateral source rule is inapplicable." (emphasis added)). In *Voge v. Anderson,* we properly characterized *Lambert* as holding that "where the insurer is barred from pursuing a claim [of subrogation], the tortfeasor is entitled to a reduction in judgment for the amount of that claim." 181 Wis. 2d 726, 732, 512 N.W.2d 749 (1994); *see also Jindra v. Diederich Flooring,* 181 Wis. 2d 579, 596, 511 N.W.2d 855 (1994) (describing "narrow situation" of *Heifetz* and *Lambert*); *Petry v. St. Paul Fire & Marine Ins.,* 151 Wis. 2d 343, 346, 444 N.W.2d 428 (Ct. App. 1989).

¶ 40. Consistent with this narrow reading of *Lambert,* we now clarify that where, as here, the risk for double recovery on the part of the plaintiff-insured does not exist because the insurer is not barred from pursuing its subrogation rights, there is no justification for nullifying the collateral source rule. In the ordinary case, the collateral source rule and the principles of subrogation work in tandem to further the goals of both rules. The collateral source rule prevents payments made by the insured from inuring to the benefit of the defendant, and the insurer's subrogation rights prevent a double recovery on the part of the plaintiff.

¶ 41. Moreover, we note that even if this case did present us with a *Lambert* situation (where the insurer is barred from pursuing its subrogation rights), reliance on *Lambert* to limit the defendants' liability to the amount paid would be misplaced. If the rule of *Lambert* were applicable in this case, the effect would not be to limit the medical expense damages to the amounts paid. Rather, if the insurer is barred from exercising its subrogation rights, the plaintiff's recovery of the reasonable value of medical expenses would simply be

52

reduced by the amounts paid on his behalf in order to prevent a double recovery.

¶ 42. The second theory posited by the defendants is an extensive argument that the medical expense damages must be limited to the amounts actually paid as a consequence of the mechanics of subrogation. The defendants argue that when the insurers made payments on behalf of the plaintiff, they extinguished the plaintiff's liability for the medical expenses and the entirety of the plaintiff's claim for medical expenses became vested in the subrogated insurers. Their argument follows that because a subrogated carrier has a claim only to the extent it made payments, the entire medical expense claim is limited to the amounts actually paid.

¶ 43. The defendants' argument rests on a misconception of subrogation principles. The creation of a subrogation interest in the insurer does not vest the entirety of the medical expense claim in the insurer. Nor does it extinguish the insured's right to recover amounts above and beyond those paid by the insurer.

¶ 44. Where an insured receives payments from an insurer for medical expenses incurred as a result of an injury, the insurer obtains a subrogation right to part of the medical expense claim only to the extent that it has made payments. *Beacon Bowl, Inc.*, 176 Wis. 2d at 775. The claim to any additional medical expense damages remains with the insured, who may seek recovery for those amounts. This court clearly explained in *Heifetz v. Johnson* that:

> [t]he insurer has a claim only for the money he paid to his insured. . . . The insured can claim all other

53

damages over and above that amount and the insurer has no claim to those damages.

61 Wis. 2d at 120.

¶ 45. Contrary to the defendant's assertions, the payments made on the insured's behalf define only the insurers' subrogation interest in the medical expense claim. The claim of medical expense damages as a whole is defined by the reasonable value of the services rendered as a result of the tortfeasor's negligent conduct. The creation of a subrogation interest in an insurer does not change the nature of the entire claim for medical expense damages. *See Wilmot v. Racine County,* 136 Wis. 2d 57, 63, 400 N.W.2d 917 (1987). Thus, recoverable medical expense damages may exist beyond that of the amount paid by the insurer, and the insured is entitled to pursue those amounts.

¶ 46. We conclude our discussion by reiterating the interaction of the three legal principles determinative of our decision. In this case, as in the ordinary personal injury case where the costs of plaintiff's medical treatment have been paid by a health care insurer, the three principles co-exist and operate in the following fashion: (1) the plaintiff is entitled to seek recovery for the reasonable value of medical services rendered in treating the claimed injury; (2) the collateral source rule allows the plaintiff to seek recovery for the reasonable value of medical services without consideration of payments made by the plaintiff's insurer; and (3) the insurer's subrogation rights entitle it to recoup the amounts it paid on the plaintiff's behalf.

¶ 47. There is no justification in the operation of any of these rules to limit medical expense damages to

the amounts actually paid by the plaintiff and his insurers. Because such a limitation is contrary to the rule of valuation of medical expense damages, the collateral source rule, and principles of subrogation, we conclude that the circuit court erred in reducing the plaintiff's medical expense award to the amount actually paid by himself and his insurers.

III

¶ 48. Having concluded that the circuit court incorrectly reduced the plaintiff's medical expense award, we must determine the correct course of action with respect to the jury's verdict. The jury awarded $98,664.18 in medical expense damages, an award between the amount paid by the plaintiff and his insurers and the stipulated reasonable value of the entirety of the plaintiff's claimed medical expenses. Ordinarily, we will sustain a jury's verdict if there is any credible evidence to support it. *Morden v. Contintental AG*, 2000 WI 51, ¶ 38, 235 Wis. 2d 325, 611 N.W.2d 659.

¶ 49. The plaintiff argues that there is no credible evidence in the record to support an award less than $187,931.78. In the alternative, the plaintiff requests a new trial on the issue of medical expense damages, based on the prejudicial effect of the evidence of the payments made on the plaintiff's behalf. The defendants argue that in the event we reverse the circuit court's reduction of damages to $66,062.58 we should reinstate the jury's original award of $98,664.18. They contend there is credible evidence in the record to support the award.

¶ 50. We agree with the defendants that there is credible evidence to support a reduced amount of medi-

55

cal expense damages. For example, Dr. Maiman testified that the plaintiff suffered from preexisting degenerative conditions that contributed to his spine problems. Accordingly, we cannot award the plaintiff, as a matter of law, the full $187,931.78.

¶ 51. However, we also cannot allow the jury's award of $98,664.18 to stand. At trial, inadmissible evidence of the amounts paid by the plaintiff's insurers became central to the issue of medical expense damages and was focused upon by the jury during deliberations. A new trial may be granted on the grounds of improper admission of evidence when the error has affected the substantive rights (*i.e.*, when the error is prejudicial) of the party seeking relief on appeal. Wis. Stat. § 805.18(2) (1997–98). In applying Wis. Stat. § 805.18(2), we use a harmless error test. This test is whether there is a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985); *Nischke v. Farmers & Merchants Bank & Trust*, 187 Wis. 2d 96, 108, 522 N.W.2d 542 (Ct. App. 1994). A reasonable possibility of a different outcome is a possibility sufficient to "undermine confidence in the outcome." *Dyess*, 124 Wis. 2d at 545.

¶ 52. Here, the evidence of the amounts paid by the plaintiff's insurers was inadmissible. As a consequence of the parties' stipulation to the reasonableness of amounts billed by the health care providers, the sole issue for the jury to determine was the amount of medical expense damages caused by the defendants' negligence. The amounts paid by the plaintiff and his insurers were irrelevant to the determination of the causal link between the treatment and the injury. In

the absence of a separate basis for the relevance of this collateral source evidence,[10] evidence of such payments should have been deemed inadmissible. *See Estate of Holt v. State Farm Fire & Cas. Co.*, 151 Wis. 2d 455, 461, 444 N.W.2d 453 (Ct. App. 1989); 22 Am. Jur. 2d *Damages* § 966 (1988).

¶ 53. The admission of this irrelevant evidence of payments made was prejudicial. The sole purpose of the defendants' presentation of that evidence was to reduce the medical expense award by the simple fact of those payments. This is exactly what the collateral source rule is designed to combat. In describing the general rule that evidence of payments of collateral sources is inadmissible, other courts have explained: " '[U]nless the prejudicial effect has been cured by an admonition or instruction to the jury to disregard it, it has been almost universally held that the receipt of such evidence constitutes prejudicial error sufficient to require reversal.' " *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998) (quoting *Halladay v. Verschoor*, 381 F.2d 100, 112 (8th Cir. 1967)).

¶ 54. The pernicious effect of the presentation of this evidence where it lacks any basis in relevancy is exemplified by the question asked of the circuit court by the jury during its deliberations. In awarding the plaintiff's medical expenses, the question to be

---

[10] *See, e.g., Hack v. State Farm Mut. Ins. Co.*, 37 Wis. 2d 1, 10, 154 N.W.2d 320 (1967) (collateral source evidence admissible for impeachment purposes).

Because the reasonableness of the amounts billed by the plaintiff's health care providers was the subject of the parties' stipulation, it cannot be said that the defendant's presentation of this evidence was material to the valuation of those expenses in this case.

answered was what amount of the $187,931.78 in claimed medical expenses resulted from accident-related injuries. The relevant evidence in answering this question was the competing testimony of the medical experts as to cause. Yet, during deliberations the jury not only inquired as to amounts actually paid, but received a response from the circuit court itemizing the specific amounts paid.

¶ 55. In the case at hand, inadmissible evidence was presented to the jury, made central to the dispute over medical expenses, and focused upon by the jury during deliberations. As a result, we conclude that it is reasonably possible that the erroneously admitted evidence of the payments made on the plaintiff's behalf contributed to the jury's verdict, and thus, we cannot reinstate the jury award of medical expenses. Accordingly, we remand the cause for a new trial on the issue of medical expense damages.

## IV

¶ 56. In conclusion, we have determined that the plaintiff was entitled to seek recovery of the reasonable value of the medical expenses rendered without limitation to the amounts paid by the plaintiff and his insurers. We therefore reverse the circuit court's determination that the medical expense damages are limited to the amounts paid by the plaintiff and his insurers. Such a limitation is contrary to the Wisconsin rule of valuation of medical expense damages, the collateral source rule, and principles of subrogation. Because we also conclude that the presentation of inadmissible evidence of payments made by plaintiff's insurers was prejudicial, we remand the cause for a new trial on the issue of medical expense damages.

*By the Court.*—The judgment of the circuit court is reversed and the cause is remanded.

¶ 57. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. I join the majority opinion. I wrote a concurrence on the issue of harmless error in *In re the Termination of Parental Rights to Jayton S.: Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶¶ 37–42, 246 Wis. 2d 1, 629 N.W.2d 768 (Abrahamson, C.J., concurring). My views on harmless error expressed in that concurrence apply to the present case as well. Rather than repeat the concurrence verbatim in the present case, I refer the reader to the *Evelyn C.R.* case.

¶ 58. JON P. WILCOX, J. *(concurring)*. I agree with the majority's analysis and disposition of the present case. I write separately, however, to address this court's recent reformulation of the harmless error test. *See* majority op. at ¶ 51.

¶ 59. For the reasons stated in Justice Crooks' concurring opinion in *Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, 245 Wis. 2d 772, 629 N.W.2d 727, which I joined in full, I am confident that the harmless error test with which this court long has grappled should be understood in terms of "probability" rather than "possibility":

> An error will not provide grounds for reversal or a new trial unless the error is significant enough to undermine confidence in the outcome of the proceeding at issue. An error is significant enough to undermine confidence in the outcome if there is a reasonable *probability* that without the error, the outcome would have been different.

¶ 60. Although this formulation of the harmless error test is more stringent than the majority's "reasonable possibility" test, I nonetheless agree with the majority that the error in this case requires us to remand this case for a new trial on the issue of damages. As the majority indicates, although the evidence regarding the amounts paid by the plaintiff's insurers was inadmissible and prejudicial, it became central in the dispute over the appropriate amount of medical expenses that the jury should award. *See* majority op. at ¶¶ 51–55. As such, I conclude that without the erroneous admission of this evidence, there is a reasonable probability that the damages awarded by the jury would have been different. The error in this case was significant enough to undermine confidence in the outcome below.

¶ 61. N. PATRICK CROOKS, J. *(dissenting)*. While I join Justice Diane S. Sykes' dissent, I write separately to express my concerns about the majority's standard for harmless error. *See* majority op. at ¶ 51. The majority's standard is "whether there is a reasonable possibility that the error contributed to the outcome," and that a "reasonable possibility" is one "sufficient to 'undermine confidence in the outcome.' " *Id.* (quoting *State v. Dyess*, 124 Wis. 2d 525, 545, 370 N.W.2d 222 (1985)). Since the standard for harmless error is the same for civil, as well as criminal, cases (*Town of Geneva v. Tills*, 129 Wis. 2d 167, 184–85, 384 N.W.2d 701 (1986)), it is imperative that the standard be accurately conveyed.

¶ 62. For at least the past 35 years, this court has wrestled with formulating a standard for harmless error. *See, e.g., Pulaski v. State*, 24 Wis. 2d 450, 456–57,

129 N.W.2d 204 (1964); *State v. Spring*, 48 Wis. 2d 333, 339–40, 179 N.W.2d 841 (1970); *Wold v. State*, 57 Wis. 2d 344, 356–57, 204 N.W.2d 482 (1973); *State v. Grant*, 139 Wis. 2d 45, 406 N.W.2d 744 (1987). In an attempt to formulate a single, uniform test for harmless error, *Dyess* "conclude[d] that the test of prejudice as formulated in *Strickland* subsumes the various statements of the harmless error test that this court has used over the years." *Dyess*, 124 Wis. 2d at 545.[1] The *Strickland* case referred to is *Strickland v. Washington*, 466 U.S. 668, 693 (1984), and the test is whether "there is a *reasonable probability*" that "but for" the error, "the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694 (emphasis added). *Dyess* obviously adopted that test, but incorrectly assumed that there was no real difference between using "reasonable possibility" instead of "reasonable probability." 124 Wis. 2d at 544. Granted, *Dyess* applied its test by stating that "[i]n the present case, the *probability* to be weighed is whether the defendant would have been acquitted." *Id.* at 546 (emphasis added). However, as evident in the major-

---

[1] *Dyess'* single test for harmless error standard has not been without controversy. *State v. Dyess*, 124 Wis. 2d 525, 370 N.W.2d 222 (1985). In addition to the majority opinion's discussion of *Dyess'* harmless error standard, authored by Justice Day, in *State v. Grant*, 139 Wis. 2d 45, 406 N.W.2d 744 (1987), Chief Justice Heffernan, Justice Day, Justice Abrahamson, and Justice Callow separately concurred on the *Dyess* issue. The controversy has continued. *See State v. Dodson*, 219 Wis. 2d 65, 92–98, 580 N.W.2d 181 (1998) (Crooks, J., concurring, joined by Justice Steinmetz and Justice Wilcox).

ity's opinion here today,[2] Wisconsin courts have frequently used the term "reasonable possibility," and have not indicated that, in the context of a harmless error standard, possibility means probability.[3]

¶ 63. There can be no doubt that there is a significant difference between what is reasonably probable and what is reasonably possible. "A possibility test is the next thing to automatic reversal." *Wold*, 57 Wis. 2d at 356–57.[4] While I agree that the focus should be "on whether the error 'undermine[s] confidence in the outcome,' " (*Dyess*, 124 Wis. 2d at 545 (*quoting Strickland*, 466 U.S. at 694)), if that error need only possibly undermine the confidence in the outcome, rather than probably, appellate courts, and circuit courts consider-

[2] *See also Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, 245 Wis. 2d 772, 629 N.W.2d 727; *Martindale v. Ripp*, 2001 WI 113, 246 Wis. 2d 67, 629 N.W.2d 698; *Evelyn C.R. v. Tykila S.*, 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768; and *Nommensen v. American Cont'l Ins. Co.*, 2001 WI 112, 246 Wis. 2d 132, 629 N.W.2d 301. (I have written dissents or concurrences in these cases.) *But see State v. Lindell*, 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223 (*Strickland*'s probability sufficient to undermine the confidence in the outcome test used to determine ineffective assistance of counsel claim).

[3] According to my research, on few occasions since *Dyess* has this court, in a majority opinion, noted that reasonable possibility means reasonable probability. *See State v. Armstrong*, 223 Wis. 2d 331, 372 n.40, 588 N.W.2d 606 (1999); *see also State v. Huntington*, 216 Wis. 2d 671, 695–96, 575 N.W.2d 268 (1998). However, several court of appeals opinions have applied the *Dyess* harmless error test using the correct "reasonable probability" standard. *See, e.g., State v. A.H.*, 211 Wis. 2d 561, 569, 566 N.W.2d 858 (Ct. App. 1997); *State v. Joseph P.*, 200 Wis. 2d 227, 237, 546 N.W.2d 494 (Ct. App. 1996).

[4] *Wold*'s "reasonable probability" test for harmless error was replaced by *Dyess*' "reasonable possibility" test.

ing motions after verdict and post-convictions motions, will find themselves invading the purview of the jury. A cornerstone of the common law is deference to the jury, which is diluted by determining whether the alleged error possibly, and only possibly, may have affected the jury's decision.

¶ 64. I do not take issue with the term "reasonable possibility," so long as it is made clear that this term means reasonable probability, and probability is the standard to be applied. Accordingly, I offer the following test for harmless error, which makes clear that *Dyess'* use of the term "reasonable possibility" is intended to require "reasonable probability":

> Wisconsin Stat. § 805.18(2) provides that an error requires reversal only where it has "affected the substantial rights of the party" claiming error. We have long recognized that the focus of a court's analysis under this statute is whether, in light of the applicable burden of proof, the error is significant enough to "undermine confidence in the outcome" of the trial. *Dyess*, 124 Wis. 2d at 544–45. An error is significant enough to undermine confidence in the outcome if there is a reasonable probability of a different outcome without the error. *Dyess* made it clear that "probability" is substantially the same as "possibility" under Wisconsin law. *Id.* at 544.

¶ 65. That Wisconsin courts have often used "reasonable possibility" rather than "reasonable probability" should not dissuade the court from correcting such missteps today. *See, e.g., State v. Sullivan* 216 Wis. 2d 768, 792, 576 N.W.2d 30 (1998); *State v. Alexander*, 214 Wis. 2d 628, 653, 571 N.W.2d 662 (1997). There is no time like the present—*dum fervet*

*opus*[5]—when the court has before it five cases wherein it discusses the harmless error standard, to clarify *Dyess*.

¶ 66. For the reasons stated herein, I respectfully dissent.

¶ 67. DIANE S. SYKES, J. *(dissenting)*. I respectfully dissent, for the reasons stated in my dissent in *Ellsworth v. Shelbrock*, 2000 WI 63, 235 Wis. 2d 678, 611 N.W.2d 76 (Sykes, J., dissenting).

¶ 68. As in *Ellsworth*, I agree with the majority here that the collateral source rule applies. The main focus of the analysis is the proper measure of damages for past medical expenses in a personal injury case, and also the influence of the law of subrogation.

¶ 69. I conclude, as I did in *Ellsworth*, that the proper measure of medical damages is the amount reasonably and necessarily incurred for the care and treatment of the plaintiff's injuries, not an artificial, higher amount based upon what the plaintiff might have incurred if he or she had a different sort of health plan or no health plan at all. *See Ellsworth*, 2000 WI 63, ¶¶ 27, 31 (Sykes, J., dissenting). It is inconsistent with the "make whole" function of compensatory damages to enrich a plaintiff by measuring medical expense damages by reference to their highest retail value rather than what was actually incurred. *Id.* at ¶¶ 23, 31.

¶ 70. The purpose of the collateral source rule is to prevent payments made on behalf of the plaintiff from inuring to the benefit of the defendant. Majority op. at ¶ 29; *see also Ellsworth*, 2000 WI 63, ¶ 7. That

[5] "While the action is fresh; in the heat of action." *Black's Law Dictionary* 518 (7th ed. 1999).

purpose is not served by completely disengaging the measure of medical damages from the facts and requiring the defendant to pay an amount in excess of what was actually incurred by the plaintiff or absorbed by someone else (employer, insurer, government or charity) on the plaintiff's behalf.

¶ 71. The purpose of subrogation is to prevent double recovery. Majority op. at ¶ 33; *see also Ellsworth*, 2000 WI 63, ¶ 18. I see little difference between double recovery and the inflated recovery that results in the circumstances of this case. Where subrogation is present and the application of the collateral source rule would defeat its purposes, subrogation trumps the collateral source rule. *See id.* at ¶ 25 n.1 (Sykes, J., dissenting) (citing *Jindra v. Diederich Flooring*, 181 Wis. 2d 579, 511 N.W.2d 855 (1994); *Voge v. Anderson*, 181 Wis. 2d 726, 512 N.W.2d 749 (1994); *Rixmann v. Somerset Pub. Sch.*, 83 Wis. 2d 571, 266 N.W.2d 326 (1978); and *Lambert v. Wrensch*, 135 Wis. 2d 105, 399 N.W.2d 369 (1987), *relying on Heifetz v. Johnson*, 61 Wis. 2d 111, 211 N.W.2d 834 (1973)).

¶ 72. The majority cites *Thoreson v. Milwaukee & Suburban Transport Corp.*, 56 Wis. 2d 231, 243, 201 N.W.2d 745 (1972) and *McLaughlin v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 31 Wis. 2d 378, 395, 143 N.W.2d 32 (1966) for the proposition that the measure of medical damages is the "reasonable value" of the medical services rendered, regardless of whether the plaintiff incurred, was charged or paid for those services. This may make sense as a measure of damages in cases—like *Thoreson* and *McLaughlin*—where there is no actual charge by which to measure damages because the plaintiff's medical costs were gratuitously absorbed by another (the welfare

department in *Thoreson* and the plaintiff's religious order in *McLaughlin*).

¶ 73. But *Thoreson* acknowledged that *in most cases* the measure of damages is the actual expense incurred or charged. *Thoreson*, 56 Wis. 2d at 243–44; *see also Ellsworth*, 2000 WI 63, ¶ 15. And here, as in most cases, there *was* an actual amount incurred (a small amount by the plaintiff and a larger amount by his insurers), and that amount came to a total of $66,062.58. I see no justification, either in the collateral source rule or the law of subrogation, for simply disregarding that *actual* amount and instead allowing recovery of an *artificial*, higher amount—$187,931.78—that no one ever has or ever will incur.

¶ 74. As I said in *Ellsworth*, "the measure of damages is not what the highest payor would have paid for the same medical services but what was actually incurred in the care and treatment of the plaintiff's injuries. . . .By this measure, the defendant is not relieved of responsibility for his tortious conduct, and the plaintiff is made whole." *Id.* at ¶ 31 (Sykes, J., dissenting). I reach the same conclusion here, and would affirm the circuit court.

¶ 75. I am authorized to state that Justice N. PATRICK CROOKS joins this dissenting opinion.